MICHAEL G. KIME ET AL. V. CASS COUNTY ET AL.[*]

FILED APRIL 21, 1904.   No. 13,454.

**Roads:** INJUNCTION. The owner of land attempted to be taken for a
public road may enjoin the use of the same for such purpose until
his damages for the taking have been ascertained and paid, or
provision made for their payment, provided such injunction is
sought before the public have acquired a prescriptive right to the
land taken.

ERROR to the district court for Cass county: PAUL
JESSEN, JUDGE. *Reversed.*

*H. D. Travis* and *W. Deles Dernier,* for plaintiffs in
error.

*Jesse L. Root, contra.*

DUFFIE, C. .

This action was brought by the heirs of Alfred Kime for
the purpose of ousting the county of Cass and the road
overseer of road district No. 58 in said county from the
possession of a strip of land 4 rods in width and 100 rods
in length claimed as part of the highways of said county.
An injunction and other equitable relief was asked. The
answer was a general denial and the claim that the prem-
ises in controversy were part of the highway known as
road No. 111, which it is alleged was regularly established
by the board of county commissioners in the year 1872.
The district court dismissed the plaintiffs' petition, and
they have taken an appeal to this court.

The record discloses that at the regular meeting of the
county commissioners of Cass county, held on June 4,
1872, a petition was presented for the appointment of a
commissioner to examine and locate a county road, com-
mencing at the southwest corner of section 30, town 10
north of range 13 east, and terminating at the road leading·
from Pollard & Sheldon's mill to Nebraska City: That a

---

[*] Rehearing allowed. See opinion, p. 680, *post.*

commissioner to view and, if in his opinion the public good required, to locate said road, was appointed at said session, and "the county clerk directed to issue a commission to him requiring him to examine the route, after giving public notice of the date when he will make said examination, and to report his action to the county clerk within 20 days after the plan of survey." July 1, 1872, the commissioner made his report to the effect that, after a view of the proposed road, being of the opinion that the public good required its establishment, he proceeded to lay out, mark and plat the same according to law. A plat and field notes of his survey are attached to this report. We do not find in the record any order of the board establishing the road as recommended by the commissioner, but the road appears to have been opened some time in the year 1872 and used more or less from that date down to 1879 or 1880. The road, as recommended by the commissioner, includes the tract of land involved in this controversy, which is a strip 4 rods wide running east from the section line between sections 29 and 30 to intersect with what is known as the Nehawka road. Some time about 1879, Alfred Kime, who then owned and was living upon the premises, gave a right of way at some distance south of the disputed premises, connecting the Nehawka road with the section line road between sections 29 and 30, and this south or "old road," as it is called in the record, was used by the public from 1879 up to 1896, when Michael G. Kime, who was then occupying the premises, fenced this right of way and attempted to prevent further public travel thereon. The old road was closed for about 2 weeks, when it was reopened and the public used the same until April, 1900, when Kime again closed it, whereupon the board of supervisors ordered the road as originally surveyed and located opened. A resurvey was made, the road opened to public travel, and the injunction is sought against what is claimed to be a continuing trespass. From 1879 up to April, 1900, the strip in dispute was not used or traveled as a public highway, and was enclosed and cultivated by the appellees and

their ancestors. We do not think it necessary to discuss the numerous questions raised by the parties in their briefs. The district court found that no damages were awarded to Kime for the land taken for this road, and we think the evidence amply sustains that finding. There is no record of the appointment of any appraisers to assess the damages, and no record of damages having been paid. In fact, no evidence of any kind appears relating to the appraisement or payment of damages. If this road had been opened and used by the public as a highway for 10 years or more, then the regularity and validity of the proceedings in establishing the same would not be examined. *Lydick v. State*, 61 Neb. 309. The public, however, ceased to use the premises as a road not later than 1879, and from that time up to April, 1900, the owner of the land has been in the exclusive possession. In this state, the county can not take posession and use land as a highway without assessing and paying or providing for the payment of damages to the land owner. This has been established by a long course of decisions. *Livingston v. Board of County Commissioners of Johnson County*, 42 Neb. 277; *Hodges v. Board of Supervisors of Seward County*, 49 Neb. 666; *Propst v. Cass County*, 51 Neb. 736; *Lewis v. City of Lincoln*, 55 Neb. 1.

It is urged by the appellees that the elder Kime dedicated the land in controversy as a public highway. The only evidence of such dedication is contained in the testimony of one Griffith who petitioned for the road in controversy. He says that he had a talk with Kime about the time of circulating the petition for the road, and that Kime told him that he desired the road to run along the section line between 29 and 30 until it reached the bluff, and there turned and run east until it intersected the Nehawka road, and that following this direction the petition was prepared as requested by Kime. There is nothing in this to indicate that Kime intended to give away his land or to waive damages for its taking. The fact that he desired the road to run across his land at the foot of the

bluff, instead of a point lower down, is no argument in favor of the theory that he intended to make a donation of the land necessary for the road. Because the county has not had the damages appraised and made provision for its payment, and because the evidence fails to establish the use of the highway in question for a sufficient length of time to give the county a prescriptive right thereto, we recommend that the decree of the district court be reversed.

LETTON and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED.

The following opinion on rehearing was filed October 20, 1904. *Judgment of reversal adhered to:*

Eminent Domain: WAIVER. Under the constitution of 1866, as well as that of 1875, mere passive acquiescence by a land owner in the taking of his property for a public use, unaccompanied by any conduct indicative of an affirmative assent thereto, and not continued for the statutory period of limitations, is not a waiver of his right to compensation therefor and can not be made so by statute.

AMES, C.

This case is before us upon a rehearing from a former decision prepared by Mr. Commissioner DUFFIE and concurred in by Messrs. Commissioners KIRKPATRICK and LETTON. Upon a reexamination of the record, we do not find that in the preparation of the former opinion anything of importance was overlooked, or that the commissioners or court fell into any error. We do not think it incumbent upon us to repeat the recital of facts contained in the former opinion. There are two vital matters disclosed thereby upon which the conclusion is based, both of which, we think, are justified by the record. The first is that no

damages were appraised, or provision made for their payment, before or at the time of the attempted establishment of the alleged public road in controversy. Under the constitution of 1866 (article I, section 13), as well as under that of 1875 (article I, section 21), such omission defeated the alleged right to appropriate the land to a public use. If, as counsel for appellees contend, the statute of 1866, under which the proceedings were had, contemplated that the right of the landowner should be treated as waived, by failure to demand compensation before or at the time of the taking, we are of opinion that to that extent the enactment was void. If the legislature could rightly require of the landowner one affirmative and initiatory act, as a condition precedent to obtaining damages, they might require of him any other, or a series of acts which might be difficult or onerous or, in some circumstances, impossible of performance, and so the constitutional guaranty might thus be seriously impaired or wholly frittered away. We are of opinion that the spirit, if not the letter, of the constitution requires that the public seeking to appropriate private property to its use should, unless damages have been waived by some affirmative and unequivocal act, take steps of its own motion to ascertain their amount and secure their payment, and that mere passive acquiescence by an individual in the appropriation of property, unaccompanied by any conduct indicative of affirmative assent thereto, should not, unless continued for the statutory period of limitations, be regarded as a waiver of his rights. The second matter determined by the opinion, and about which the record leaves no room for doubt, is that the public have not occupied the lands in suit, continuously, for so long a time as is required by the statute to acquire, by that means, a prescriptive title to the alleged easement.

In view of these two findings, the conclusion at which the commission and the court arrived appears to us unavoidable, and we recommend that the former decision be adhered to.

LETTON and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the former decision be adhered to.

JUDGMENT OF REVERSAL ADHERED TO.