[No. 11156.   Department One.   August 7, 1913.]

ALVIN KINCAID, *Respondent*, v. THE CITY OF SEATTLE,
*Appellant*.[1]

MUNICIPAL CORPORATIONS—CLAIMS—ACTIONS — CONDITIONS PRECEDENT—WAIVER.   The requirement that a claim against a city for damages sounding in tort shall be verified and shall state the residence of the claimant is made mandatory by Rem. & Bal. Code, §§ 7996, 7997, and therefore a condition precedent to action, which cannot be waived by the city.

EMINENT DOMAIN—TAKING FOR PUBLIC USE—INJURY TO ABUTTERS. Where a city extends the slope of the fill in street grading work onto abutting property there is a taking of the property for public use, within Const., art. 1, § 16, providing that no property shall be taken for public use without compensation.

MUNICIPAL CORPORATIONS — CLAIMS — "SOUNDING IN TORT"—EMINENT DOMAIN—COMPENSATION FOR PROPERTY TAKEN.   The right to recover compensation for property taken by a city for public use under Const., art. 1, § 16, is not a claim "sounding in tort" within Rem. & Bal. Code, § 7995, requiring claims against a city for damages sounding in tort to be presented as a condition precedent to action; since the city in taking property acts in its sovereign capacity and not as a wrongdoer or trespasser, strictly speaking, and the constitutional guarantee of compensation cannot be made to depend on statute law (GOSE, J., dissenting).

SAME—CLAIMS—COMPENSATION FOR PROPERTY TAKEN.   The right to recover compensation for property taken by a city for public use under Const., art. 1, § 16, is not a claim for damages or a contract claim within Seattle charter, art. 4, § 29, requiring all claims for damages against the city to be presented as a condition precedent to action; since the constitutional right to compensation cannot be so taken away (GOSE, J., dissenting).

EMINENT DOMAIN—COMPENSATION—INJURY TO PROPERTY—MEASURE OF DAMAGES.   The measure of damages for extending the slope of a fill in street grading work onto abutting property is the difference between the fair market value of the property before and after the taking; and not the cost of removing the earth and building a bulkhead.

TRIAL—INSTRUCTIONS—ERRORS CURED.   Erroneous instructions on the measure of damages are not cured by proper instructions, where the court excluded all the testimony to which the proper instructions could apply.

[1]Reported in 134 Pac. 504; 135 Pac. 820.

Appeal from a judgment of the superior court for King county, Humphries, J., entered March 4, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages to property. Reversed.

*James E. Bradford* and *Melvin S. Good*, for appellant.

*France & Helsell*, for respondent.

CHADWICK, J.—This action was brought to recover damages done to the property of the plaintiff by reason of the grading of a certain street in the city of Seattle. Plaintiff was the owner of abutting property. In grading the street to its full width, the slope of the fill necessarily extended over onto plaintiff's lots. The city had not obtained the right to do this by condemnation or otherwise. Thereafter plaintiff filed a claim for damages. No formal action, other than to place the claim on file, was taken by the city, and after a time plaintiff brought this action asking to have his damages assessed. From a verdict in his favor, the city has appealed.

The first assignment is that the claim filed by the plaintiff is insufficient in form. Section 7995, Rem. & Bal. Code (P. C. 77 § 133), provides:

"Whenever a claim for damages sounding in tort against any city of the first class shall be presented to and filed with the city clerk or any other proper officer of such city, in compliance with valid charter provisions of such city, such claim must contain, in addition to the valid requirements of such city charter relating thereto, a statement of the actual residence of such claimant, by street and number, at the date of presenting and filing such claim; and also a statement of the actual residence of such claimant for six months immediately prior to the time such claim for damages accrued."

By its terms, the act of which this section is a part provided that it should in no way modify, limit, or repeal any valid charter provision relating to claims, but should be considered therewith. Rem. & Bal. Code, § 7996 (P. C. 77

§ 135). Section 7997 of the code (P. C. 77 § 137), is as follows:

"Compliance with the provisions of this act is hereby declared to be mandatory upon all such claimants presenting and filing any such claims for damages."

The charter of the city of Seattle, art. 4, § 29, is as follows:

"All claims for damages against the city must be presented to the city council and filed with the clerk within thirty days after the time when such claim for damages accrued and no ordinance shall be passed allowing any such claim or any part thereof or appropriating money or other property to pay or satisfy the same or any part thereof, until such claim has first been referred to the proper department, nor until such department has made its report to the city council thereon, pursuant to such reference. All such claims for damages must accurately locate and describe the defect that caused the injury, accurately describe the injury, give the residence for one year last past of claimant, contain the items of damages claimed and be sworn to by the claimant. No action shall be maintained against the city for any claim for damages until the same has been presented to the city council and sixty days have elapsed after such presentation."

The claim filed by plaintiff was not verified; neither did it state the place of residence of the claimant. The lower court seems to have considered the claim to be insufficient in form, but instructed the jury that it might find upon certain testimony offered by respondent that the city had waived technical compliance with the provisions of the statute and the charter. These provisions have, since the passage of the act of 1909, been held by this court to be mandatory; and therefore a condition precedent to the bringing or the maintenance of an action. *Cole v. Seattle*, 64 Wash. 1, 116 Pac. 257, Ann. Cas. 1913 A. 344, 34 L. R. A. (N. S.) 1166; *Collins v. Spokane*, 64 Wash. 153, 116 Pac. 663, 35 L. R. A. (N. S.) 840; *Benson v. Hoquiam*, 67 Wash. 90, 121 Pac. 58.

We are asked to construe the statute and to overrule or distinguish certain of our former decisions; but, from the view we take of the case, it will be unnecessary to follow the arguments of counsel or to even review our former decisions touching claims against municipal corporations. If this action "sounds in tort" it must be admitted that the claim is within the letter of the statute. If it be for breach of contract, then it is governed by the case of *Postel v. Seattle,* 41 Wash. 432, 83 Pac. 1025, and must comply with the provisions of the charter. The *Postel* case is vigorously attacked, but inasmuch as the doctrine of that case will be further considered by this court in the case of *International Contract Co. v. Seattle, post* p. 662, 134 Pac. 502, reheard July 21, we will not discuss it, but admit that it is sound.

Notwithstanding the statutes and the charter, respondent contends that a claim for a damage such as he has suffered is not an ordinary contract claim, and does not have to be presented to the council; that to require it to be done is in violation of § 16, art. 1 of the state constitution, providing that property shall not be taken for a public use without compensation. Whatever its method, the city has taken respondent's property for a public use in virtue of its sovereignty, and subject only to the limitations to be found in the constitution. When taking private property for a public use, the state acts in its sovereign capacity. *Gasaway v. Seattle,* 52 Wash. 444, 100 Pac. 991, 21 L. R. A. (N. S.) 68; *Samish River Boom Co. v. Union Boom Co.,* 32 Wash. 586, 73 Pac. 670. It goes not as a trespasser, inspired by selfish or unlawful motive, but as one taking without malice or intent to do wrong and presumptively for the public good. It cannot put on the cloak of a tort feasor under the statute if it would. It cannot plead a wilful wrong to defeat a just claim. The rule comes from our original conception of sovereignty, that the king, the sovereign, or, in modern times, the sovereign which is the people acting in their own behalf, will not and therefore cannot do any

wrong. It was so written and was the law in England, whence our jurisprudence comes. The sovereign could take the property of the individual unto himself, or for the kingdom, or he could give it to another. As civilization developed and civil rights became more secure, when vassalage gave way to the dignity of citizenship, the right of the sovereign, or the sovereignty as we have it in this country, though not denied, was leavened with that basic principle of elemental justice which demands that no man shall give unwillingly unless he is paid in money for that which is taken from him. The constitution does not give the right to take; that is inherent in the state. Its only office is to define the limitations to be put upon its exercise; that is, that no property shall ever be taken without compensation.

Having the right to take, a municipality, whatever its procedure or even lack of procedure, is not a wrongdoer. The remedy of the one whose property is taken is immaterial so long as it leads to compensation as provided in the constitution. The city is bound to make compensation under a compact no less formal than the constitution itself, and it cannot defeat this constitutional right by a charter provision or an ordinance, nor can the legislature take it away by any arbitrary requirement, although we may admit that it could, as in all other cases, fix a time within which an action must be brought to recover damages that have not been first ascertained and paid. The city must be held to adopt the guarantee of the constitution and make it its promise, for we know of no law that will impute to the city, when exercising the sovereign power of the state, a wilful intention to disregard the right of a citizen.

"The right of eminent domain being recognized by the supreme law of the land, it would involve a contradiction to hold that in the exercise of that right there can exist the legal elements of a wrong. In the civil economy of political society whatever is legal is right; the power of eminent domain is legal, and is therefore right; being right in legal contemplation it excludes from the transaction to which it is

properly applied all wrong, and therefore all tort. The taking of private property without the consent of the owner on the part of an individual is a wrong *per se;* but not necessarily so upon the part of the government, as it has the constitutional right to take private property against the will of the owner, subject to the condition of paying for it. Individuals hold their property subject to the wants and necessities of the public, and if in the exercise of the right of eminent domain the public appropriate such property, a compensation in value is the only redress due the owner." *Merriam v. United States,* 29 Court of Claims 250.

"It is doubtless true that a 'claim of right to condemn' cannot be predicated solely upon wrongful possession, but it is also true that the right itself is not extinguished by such possession." *Samish River Boom Co. v. Union Boom Co.,* 32 Wash. 586, 73 Pac. 670.

"The acts complained of in this case, if done without authority of law, would be wholly unjustifiable. But having been performed in the execution of a power conferred by the legislature [we may here say in the exercise of the state's inherent right], and of consequence under the sanction of the law, their legal character was changed. It would be absurd to say that they were tortious and illegal." *Brown v. Beatty,* 34 Miss. 227, 69 Am. Dec. 389.

"The constitution also provides that, whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such, without regard to any legislative assertion that the use is public. Under the constitutional guaranty, the owner of the land appropriated in this case by the county could not be compelled to present a claim for damages. He can remain quiet and be assured that before his property is condemned the county must ascertain his damage, and either pay it to him or pay it into court for his benefit and the amount of his damages must be ascertained in a court, in a proceeding instituted for that purpose, and in which the defendant can appear and make his showing, if he so desire." *Peterson v. Smith,* 6 Wash. 163, 32 Pac. 1050.

"To give effect to a law of this kind would be to substantially overthrow the provision of our constitution which pro-

vides, in § 16 of art. 1, that no private property shall be taken or damaged without just compensation having been first made or paid into court for the owner. It is true that, if the owner comes into court and files his claim for damages, the law provides machinery for having it ascertained and paid, but, if for any reason he does not so appear and file his claim, the property is to be taken without this provision of the constitution having been in any manner complied with." *Askam v. King County*, 9 Wash. 1, 36 Pac. 1097.

"The relator was admittedly a trespasser, and while it lost no right by reason of its trespass, neither did it gain any. The only consideration we can give to the trespass is to accord to it the same force as a formal selection of that route across respondents' land." *State ex rel. Postal Telegraph Cable Co. v. Superior Court*, 64 Wash. 189, 116 Pac. 855.

See, also, *Snohomish County v. Hayward*, 11 Wash. 429, 39 Pac. 652.

The action for damages for land taken without compensation is usually spoken of, and is in its nature, one of trespass; but it is not strictly so. If the state or its agent, in the prosecution of a public work, takes no more than is necessary, and prosecutes its work without negligence, it is neither a trespasser nor a tort feasor. This principle is the controlling one in *Lund v. Idaho & Washington Northern R. Co.*, 50 Wash. 574, 97 Pac. 665, 126 Am. St. 916, where it was held that, having a right, a railroad company would not be ejected although an injunction would issue pending a trial to fix damages. This case is later in time and, in the opinion of the writer, is better considered than the earlier case of *Owen v. St. Paul, M. & M. R. Co.*, 12 Wash. 313, 41 Pac. 44, where it seems to have been held that ejectment would lie without qualification.

In *Kakeldy v. Columbia & Puget Sound R. Co.*, 37 Wash. 675, 80 Pac. 205, it was held that one who acquiesces in the construction and operation of a railroad "is estopped thereafter to maintain ejectment or a suit for injunction to prevent the operation of the road. His remedy is limited to an action for damages."

The following cases did not turn upon the question of claim, but they logically hold that it would violate the constitutional right of the property owner if he were required to initiate his right to compensation by any affirmative act.

"If the legislature could rightly require of the land owner one affirmative and initiatory act as a condition precedent to obtaining damages, they might require of him any other, or a series of acts which might be difficult or onerous or, in some circumstances, impossible of performance, and so the constitutional guaranty might thus be seriously impaired or wholly frittered away. We are of opinion that the spirit, if not the letter, of the constitution, requires that the public seeking to appropriate private property to its use should, unless damages have been waived by some affirmative and unequivocal act, take steps of its own motion to ascertain their amount and secure their payment, and that mere passive acquiescence by an individual in the appropriation of property, unaccompanied by any conduct indicative of affirmative assent thereto, should not, unless continued for the statutory period of limitations, be regarded as a waiver of his rights." *Kime v. Cass County*, 71 Neb. 677, 99 N. W. 546, 101 N. W. 2.

"Obtaining by grant from the owner, or by adverse possession long enough to bar his claim to the property, or by condemning and paying for it, are the only modes of obtaining private property for public use in this state; and no act which devolves on the owner the duty of initiating proceedings for compensation for his property, as the condition of his obtaining it, is allowable. He cannot be required to become an actor, under the penalty of losing his property, and 'due compensation' for it, if he shall not." *Yazoo-Mississippi Delta Levee Board v. Dancy*, 65 Miss. 335, 3 South. 568.

"The public receives the benefit from the location of the road and must bear the burden of compensation for the land taken. The law should be construed in such a way as to do justice, and no strict rule applied that will rob a party of his property." *Pawnee County v. Storm*, 34 Neb. 735, 52 N. W. 696.

Mr. Lewis says the provisions of the constitution are imperative, and any law which violates them is incapable of en-

forcement. Lewis, Eminent Domain (3d ed.), § 676. : We are not without authority in our own state to sustain these general principles. It was held in *Adams County v. Dobschlag*, 19 Wash. 356, 53 Pac. 339, that a statute designed to put the property owner to the hazard of costs, in the event that he failed to recover more than had been tendered, was unconstitutional. This case was reaffirmed in *Kitsap County v. Melker*, 52 Wash. 49, 100 Pac. 150. In *State ex rel. Smith v. Superior Court*, 26 Wash. 278, 66 Pac. 385, where it was sought to substitute a bond for the actual payment of money, the court said:

"The protection to the owner of property is not the protection guaranteed by a bond upon which suit would have to be instituted, and the party subjected to all the delays and dangers incident to a lawsuit, with the possibility of bondsmen becoming insolvent, nor any other compensation that is coupled with doubtful results, vexations, or delays. But the guaranty is that no private property shall be taken or damaged without just compensation having been first made, or paid into court for the owner."

The case of *Hart v. Seattle*, 45 Wash. 300, 88 Pac. 205, arose out of a claim for damages resulting from a change of grade. Plaintiff sought his remedy in equity. The logic of the court's holding is that there was a taking without compensation, and that the ordinance requiring claims for damages to be presented had no application to "a case of this character."

This holding proceeds upon the theory that the wrong committed is not in the act of taking, but in the manner of taking, for "title to property is always held upon the implied condition that it must be surrendered to the government either in whole or in part, when the public necessities, evinced according to the established forms of the law, demand." 15 Cyc. 557; citing: *Hale v. Lawrence*, 21 N. J. L. 714, 47 Am. Dec. 190; *People v. Mayor etc. of New York*, 32 Barb. 102; *Mack v. Eastern & N. R. Co.*, 10 Pa. Dist.

102; *Leisse v. St. Louis & Iron Mountain R. Co.*, 2 Mo. App. 105; *Raleigh & G. R. Co. v. Davis*, 19 N. C. 451.

So it will be seen that, where the petitioner is about to take possession without condemnation, injunction is a proper remedy; where there has been a taking and the public function is being exercised, the only remedy is to take compensation. Whether we call the taking a tort, or say that the claimant can waive the tort and sue on an implied contract, it makes no difference; the law is the same. The constitutional right to compensation cannot be taken away, for the right to redress the wrong does not and cannot be made to depend upon statute law. The remedy is in the courts having jurisdiction to redress wrongs under the forms of the common law. "The remedy is commensurate with the wrong." *Keill v. Grays Harbor & Puget Sound R. Co.*, 71 Wash. 163, 127 Pac. 1113. The owner being estopped to deny the right, and the petitioner being bound to meet the demands of the constitution, it would be illogical in the extreme to hold that the petitioner should be permitted to insist upon something that, if it had proceeded regularly, it was bound to ascertain in a proceeding in which the claimant does not even have to file an answer.

We hold that the right to recover compensation for property taken by a city for a public use under § 16, art. 1, of the constitution, is not a claim "sounding in tort," within the meaning of the statute, Rem. & Bal. Code, § 7995 (P. C. 77 § 133), or a contract claim within the meaning of the charter of the city of Seattle as construed in *Postel v. Seattle, supra.*

The court was of opinion that the city could not show that there had been no depreciation in the market value of the property by reason of the improvement, and rejected all testimony offered to prove this fact. The court said: "I think the measure of damage is the moving of the earth and replacing the fences and everything of the kind." The character and plan of the improvement was for the city to de-

termine, and the property owner is bound by it. *Hinckley v. Seattle, ante* p. 101, 132 Pac. 855. It might have put in a bulkhead or wall, or it might have adopted a plan for a slope. In the absence of a plan, the city is bound by its act, and damages must be assessed upon the theory that the slope will remain. If the slope is a damage, it can be measured under the general rule, *i. e.*, the fair market value of the property before and after the taking. This measure is comprehensive, and except in rare instances, will cover all items of damage. It is approved by all textwriters and has the sanction of this court. *Seattle & M. R. Co. v. Roeder*, 30 Wash. 244, 70 Pac. 498, 94 Am. St. 864; *Enoch v. Spokane Falls & N. R. Co.*, 6 Wash. 393, 33 Pac. 966; *Kaufman v. Tacoma, Olympia & Grays Harbor R. Co.*, 11 Wash. 632, 40 Pac. 137; *Murphy v. Chicago, Milwaukee & St. Paul R. Co.*, 66 Wash. 663, 120 Pac. 525.

The court instructed the jury upon the theory that the jury might estimate the cost of removing the fill and building a bulkhead. This was improper. *Jones v. Seattle*, 23 Wash. 753, 63 Pac. 553. It is contended that, notwithstanding all this, the court did instruct the rule of market value. It is true that some of the instructions refer to this rule, but they cannot be held to control the objectionable instructions, for the reason that the court excluded all testimony offered by the city to which they might have been made to apply.

For the reason last assigned, the case is reversed and remanded for a new trial.

CROW, C. J., PARKER, and MOUNT, JJ., concur.

GOSE, J. (dissenting)—The action either sounds in tort or arises out of a contract, express or implied. If it sounds in tort, the statute governs; if it is upon contract, it is controlled by the city charter. The majority opinion rests upon the fiction that the sovereign can do no wrong. The respondent asserts that it has done a wrong and the suit is

waged to redress the wrong. A property right resting upon the constitution is no more sacred than any other property right. As I read the cases, they do not support the view taken by the majority. I think that the failure of the respondent to properly present his claim precludes a recovery. Upon that ground only, I dissent.

### On Petition for Rehearing.

[*En Banc.* October 18, 1913.]

Chadwick, J.—A petition for rehearing has been filed wherein it is charged that our decision leaves the question of presentation of claims under the Seattle charter in a chaotic condition. It is insisted that the facts in *Postel v. Seattle*, 41 Wash. 432, 83 Pac. 1025, are identical with the facts in the present case, and that inasmuch as we did not in our opinion overrule the *Postel* case but admitted [the petitioner says reaffirmed] it to be the law, that we now have two cases upon identical facts, the one holding that a claim must be presented, and the other that it may not be. It is to be regretted that decisions of appellate courts cannot be written so that they state the law to the satisfaction of counsel on both sides of a case. We are arraigned because it is said that we held that the *Postel* case arose in contract. We did not say that the *Postel* case was a case arising in contract. We did say that if the claim arose in contract it would be governed by the *Postel* case, for, as we said in *International Contract Co. v. Seattle*, 69 Wash. 390, 125 Pac. 152:

"We have no doubt of the intention of the court to hold in the *Postel* case that all claims for damages whether sounding in tort or contract, must be presented within the time and in the manner there provided."

There is an expression in that case which should be noticed. We said:

"In the *Postel* as well as the *Jurey* case, the city violated a positive duty to protect the property of the citizen and to col-

lect and distribute to him that which was his lawful due under a positive contract."

The inadvertent reference to the *Postel* case will appear to one who reads these cases, and is made certain by the reference to the *Jurey* case which follows the quotation we have just made. In the *Postel* case, it was decided that the charter provisions of the city of Seattle applied to all cases whether arising in tort or in contract, and this holding, after rehearing and reargument, has been adhered to in *International Contract Co. v. Seattle, post* p. 662, 134 Pac. 502, and *Connor v. Seattle* (Wash.), decided Oct. 10, 1913. The question raised in the principal case, that is, whether a claim for property taken or damaged in violation of art. 1, § 16 of the constitution would have to be presented, was not discussed by the court and not decided. No condemnation had been made in the *Postel* case, and in so far as it may be considered as an authority that a city can ignore the constitution and take the law in its own hands, it is, in effect, overruled by the principal case. *Casassa v. Seattle* (Wash.), 134 Pac. 1080.

Counsel complains that the appellant had made improvements without first condemning the interest of the owner and ascertaining his damage, relying upon the fact that a claim would have to be presented in such cases, and that our decision will subject it to litigation. The answer to this is that the constitution is plain, and this court is not responsible for the fact that the city proceeded in violation of private right. In this case the city damages the property of the respondent "without compensation first made and paid into court." We have gone as far as justice requires, and further than many courts have gone, in holding that the law will not compel a city to undo its work pending the payment of damages. We are unwilling to hold that a city can plead a violation of a constitutional guarantee and justify its wrong by invoking some ordinance or statute.

Neither has the court written any exception into the law in violation of our words in *International Contract Co. v. Seattle*, *post* p. 662, 134 Pac. 502, as is insinuated in the petition; we have sought only to preserve an exception that the whole people of the state adopted for their own protection against municipalities and other public agencies who seek to put private property to a public use.

· We have not announced a new rule. The governing principle runs through the decisions of this court which we have cited and quoted. To hold otherwise would be to hold that unless the property owner protected himself with an injunction before the work is begun, he would be without remedy except upon such terms and conditions as the city might prescribe. Having the right to proceed, the city could proceed in all cases without condemnation in the hope that the property owner might be ignorant of the invasion of his property until the time for the presentation of claims had expired. It seems clear that we must either hold that the city must first condemn in all cases, or that it must meet the damages in a subsequent suit. For the reasons stated in the opinion, we prefer to hold to the latter proposition.

An owner of private property in a city has few rights that the city is bound to respect, but the rights which the constitution gives him are his, and until the people modify their will, no city can take them away. The principal case has been approved by the members of department two in the *Casassa* case, so that it has the sanction of eight members of the court.

No attempt has been made to meet our argument or the logic of the authorities upon which our opinion is made to rest; counsel is content to base his plea upon his conception of the *Postel* case and the rule of *stare decisis*. We have undertaken to show that the *Postel* case does not control, consequently the rule invoked does not pertain.

Petition denied.

ALL CONCUR.