MARTIN ROTHECKER, Axel Lyng, and K. Rensla, as Supervisors of Falsen Township, and Falsen Township, a Municipal Corporation, Respondents, v. CHARLES WOLHOWE, Appellant.

(166 N. W. 515.)

**Highway — establishment of — county commissioners — statute — compliance with — damages — assessment — payment — property owner — mere acquiescence — waiver of rights — is not petition for highway — signed by such owner — improvements made — knowledge of owner — aid given by in construction — legality of highway — cannot question — limited to damages.**

Where county commissioners seek to establish a highway under the provisions of § 1927 of the Compiled Laws of 1913, they should comply with the provisions of the statute in regard to the assessment and payment of damages; and where such has not been done mere acquiescence by a property owner in the establishment of the road will not in itself amount to a waiver of the right to such determination of damages. Where, however, the property owner himself signed the petition for the highway, and stood by while improvements were made on an approach thereto, and in order that the same might be used, and for a number of years acquiesced in the use of the road, and himself aided in the construction of a small improvement thereon, he will not be allowed to question the right to the highway or to obstruct the use thereof, but will be limited to his right to damages alone. This right, however, may be asserted in an action which is brought against him for an injunction to restrain the obstruction of the highway, and even though the injunction is allowed.

Opinion filed January 18, 1918.   Rehearing denied February 20, 1918.

Action to restrain the obstruction of a highway.

Appeal from the District Court of McHenry County, Honorable *A. G. Burr,* Judge.

Judgment for plaintiffs.   Defendant appeals.

Modified.

*C. W. Hookway* and *E. R. Sinkler,* for appellant.

It is admitted in this case that no order such as is required by law was ever made or filed by the county commissioners. A public highway is never legally established until the making and filing of the order. Comp. Laws 1913, § 1927; Wayne v. Caldwell, 1 S. D. 483, 35 Am. St. Rep. 750, 47 N. W. 547.

No improvements were put upon the so-called highway, on the land of this defendant. No money was expended on same on his land. Defendant therefore is not estopped. Stewart v. Stevens, 10 Colo. 440, 15 Pac. 786.

*Bagley & Thorpe,* for respondents.

Even when the county commissioners failed to make and file the required order declaring a public highway, where the defendant, the owner of lands affected, stood by and saw work being done and aided to some extent in the same, and where such highway was used thereafter, he cannot question the legality of such highway. By his acts and conduct he is estopped. Cory v. Spencer, 67 Kan. 648, 63 L.R.A. 275, 73 Pac. 920; Lawrence v. Leidigh, 58 Kan. 594, 62 Am. St. Rep. 631, 50 Pac. 600.

He must show in any event that he was prejudiced by the laying out of the highway in some substantial way at the time, and that by reason of the acts of the county commissioners his position was changed to his detriment. Semerad v. Dunn County, 35 N. D. 437, 160 N. W. 855.

"Where a highway has once been opened and put into use, its existence or nonexistence cannot be questioned in a prosecution for obstructing it on account of any irregularity of the supervision in opening it." Miller v. Porter, 71 Ind. 521; 37 Cyc. 128, and cases cited; Ekwortzell v. Blue Grass Twp. 28 N. D. 20, 147 N. W. 726.

The defendant is estopped to question the legality of this highway. "Besides these owners have allowed the town to expend thereafter sums in making the highway and building bridges thereon without raising any question of the validity of the order laying it out. Under these circumstances both the defendant and the grantor have acquiesced in the validity of the highway altogether too long to be heard now to dispute it." State v. Wertzel, 62 Wis. 184, 22 N. W. 150; 16 Cyc. 91, and cases cited; Dickerson v. Colgrove, 100 U. S. 578, 25 L. ed. 618; Ekwortzell v. Blue Grass Twp. 28 N. D. 20, 147 N. W. 726; Orient Min. Co. v. Freckleton, 27 Utah, 125, 74 Pac. 652.

Bruce, Ch. J. This is an appeal from a judgment enjoining the defendant from obstructing a certain highway within Falsem township, in McHenry county, North Dakota.

The stipulated facts are as follows:

"There was, on the 31st day of March, 1909, or about that time, a

petition for the laying out of this certain road, or highway, described in the complaint, signed by a great many taxpayers and voters of the vicinity, and, among others, signed by this defendant,—the road going over land owned by the defendant, and the land in controversy. This was properly posted, as the affidavit will show; filed with the county commissioners,—it not being organized into a township,—and the county commissioners had hearing on the petition; fixed a day for hearing, and notice of hearing was properly given by posting and service. The county commissioners met at the time set for hearing, as appears by the records of the auditor; that is, that on the return day of that notice, the time set for hearing, the commissioners were in session; but there the proceedings, so far as the county auditor's office is concerned, were stopped,—there is nothing to show any road was ever laid out by any order in writing, or any formal order, and no award shown, if any. And there is nothing to show any claim for damages by anybody."

"The record is entirely silent as to any further proceedings. There is no showing whatever as to whether the petition was taken up or not. The facts, however, further are that, immediately after this time, the county commissioners expended a large amount of money in the improvement of this road, building bridges and so on. And the road was opened to the public for use, and has been used all the time since then until the defendant attempted to stop its use."

In addition to this stipulation the evidence shows that a notice of a day of hearing was served upon the defendant, but that he made no appearance before the board of county commissioners to object to the laying out of the road. He testifies that he supposed for over three years that the final order had been made. He accepted material from the Minneapolis, St. Paul, & Sault Ste. Marie Railway Company, which was given to the people of the county for use on the road and helped to construct with it a bridge 6 yards south of the quarter line. He, it is true, says that he did not think that there would be any road there, but he thought that he would have the bridge anyway; but the fact remains that the lumber was given for the improvement of the road. He permitted McHenry county to spend over $2,000 in constructing a bridge over the Mouse river, which, although not directly on the line, connected the travel on this road and would serve but little purpose without the road. The record also shows that the road was but a short distance from

the defendant's home and buildings, and that there had been continual travel in the vicinity of said road and upon the same ever since 1886.

The first contention of the defendant is that, before an injunction may issue restraining a property owner from interfering with the free use by the public of a thoroughfare which crosses through his land, it must first be established that a public highway exists. He maintains that the record does not disclose that such highway was ever legally laid out. He relies upon § 1927 of the Compiled Laws of 1913, which provides: "Whenever such board of county commissioners or supervisors shall lay out, alter, or discontinue any highway, they shall cause a survey thereof to be made when necessary, and they shall make out an accurate description of the highway so altered, discontinued or laid out, and incorporate the same in an order to be signed by them, and shall cause such order, together with all the petitions and affidavits of service of notice, to be filed in the office of the county auditor, if by county commissioners, and in the office of the town clerk if by township supervisors, who shall note the time of filing the same; but on the refusal of said board to lay out, alter or discontinue such road they shall note the fact on the back of the petition and file the same as aforesaid. All orders, petitions and affidavits, together with the award of damages, shall be made out and filed within five days, after the date of the order for laying out, altering or discontinuing such highway. But the county auditor or town clerk shall not record such order within thirty days, nor . . . then unless such order is confirmed, and when such order, together with the award, has been recorded by said county auditor or town clerk as the case may require the same shall be filed in the office of the county auditor. And in case the board having jurisdiction shall fail to file such order within twenty days they shall be deemed to have decided against such application."

He also relies upon the provisions of the statutes, which provide:

"1929. The damages sustained by reason of laying out, altering or discontinuing any road may be ascertained by the agreement of the owners and county commissioners or township supervisors, as the case may be, and unless such agreement is made, or the owners shall, in writing, release all claim to damages, *the same shall be assessed in the manner hereinafter prescribed before the same is opened, worked or used.* Every agreement and release shall be filed in the town clerk's office when

with a township and in the county auditor's office when with a county and shall forever preclude such owners of land from all further claims for damages. In case the board and the owners of land claiming damages cannot agree, or if the owner of any land through which any highway shall be laid out, altered or discontinued is unknown, the board shall in their award of damages specify the amount of damages awarded to all such owners, giving a brief description of such parcel of land in their award; the board having jurisdiction shall assess the damages at what they deem just and right to each individual claimant with whom they cannot agree. Supervisors shall deposit a statement of the amount of damages assessed with the town clerk, county commissioners with the county auditor, who shall note the time of filing the same. The board in assessing damages shall estimate the advantages and benefits the new road or alteration of an old one will confer on the claimant for the same as well as the disadvantages. Any person living on United States land who has made his declaratory statement for the same in the proper land office, shall for all the purposes of this article be considered the owner of such lands."

"1935. Any person who shall feel himself aggrieved by any determination or award of damages made by the supervisors of any town or towns, or by the commissioners of any county, either in laying out, altering or discontinuing, or in refusing to lay out, alter or discontinue any highway or cartway, may, within thirty days after the filing of such determination or award of damages, as provided in this chapter, appeal therefrom to a justice of the peace of the county for a jury to hear and determine such appeal; provided, the amount of damages allowed in such appeal does not exceed $100."

"1938. In case the amount of damages claimed exceeds $100, appeal may be taken within thirty days to the district court of the county in which said damages are sustained, by filing in the office of the clerk of such court a bond to be approved by the judge of such district court, or the court commissioner, or the county auditor of the county, of the same nature as provided in the two preceding sections and by the service of a written or printed notice of such appeal upon the chairman of the board of supervisors or county commissioners as the case may be, signed by the party making the appeal, or his attorney. Such appeal shall bring before the appellate court the propriety of the amount of damages

and all matters referred to in such notice of appeal; unless the parties otherwise agree, the matter shall be submitted to a jury and tried as other appeal cases are tried, and the court or jury, as the case may be, shall reassess the damages aforesaid, and make the verdict conform to the justice and facts in the case; but the rule for ascertaining and fixing such judgment shall be based upon the same principles as the supervisors or commissioners were required to adopt in originally determining the same; and upon judgment being rendered the clerk of said court shall serve a certified transcript of such judgment upon the chairman on whom the notice of appeal was served as aforesaid. If the determination of the board of supervisors or commissioners appealed from be affirmed, or if the amount of damages allowed be reduced, . . . or if such determination shall be altered, modified or reversed in said district court, otherwise than as to the amount of damages, such costs and disbursements shall be paid by the town or county, as the case may be; said costs and disbursements to be taxed and adjusted as in other cases in said district court, and judgment entered therefor in like manner."

He maintains that there must be some record by which the public and private rights in a proposed public highway are clearly defined.

He also maintains that there is no award of damages or pretense of an award.

The plaintiffs on the other hand, maintain that the defendant is estopped from questioning the legality of the road by reason of his silence, his acquiescence, and his conduct.

There is merit in the contention that no award of damages was made or reported to the board. There is nothing in the record to show that even the report of the viewers was acted upon, and there is certainly no evidence that the board in any way complied with the provisions of § 1927, which requires them to "make out an accurate description of the highway so altered, discontinued or laid out and incorporate the same in the order to be signed by them, and shall cause such order together with all the petitions and affidavits of service to be filed in the office of the county auditor," etc. Nor is there any compliance shown with the provision of the same section that "all orders, petitions and affidavits together with the award of damages shall be made out and filed within five days after the date of the order for laying out, altering, or discontinuing such highway;" nor is there any answer or de-

fense, unless it be estoppel, to the provision of the same section that "in case the board having jurisdiction shall fail to file such order within twenty days, they shall be deemed to have decided against such application."

There is, it is true, a claim that the petition was granted, but the proof falls far short of showing the issuance of even a verbal order, or that any finding of damages or lack of damages was made by the county commissioners. All that the record shows is the acceptance of the petition, and the passage of a motion to appoint a board of viewers and to fix the date of hearing of the report of the viewers and complaints of said landowners, if any, on the 6th day of April, 1909.

The testimony is as follows:

Q. Have you the records here that will show the proceedings of the board of county commissioners of this county on March 17, 1909?

A. Yes, sir.

Q. I will ask you to turn to the proceedings of the board of county commissioners of that date, and state what the record shows in reference to the granting of this road petition.

The Court: Here is the record for that date.

A. The record shows a road petition, signed by A. E. Walley and others, asking to have a certain highway laid out along the Mouse river in a northwesterly direction, was accepted and approved. After taking this petition under consideration the motion was made, seconded, and carried, the same was accepted, and a board of viewers appointed by the chairman, and consisting of A. G. Anderson, M. G. Myhre, and J. B. Reider. The auditor was also instructed to get out the proper notices of hearing and to have the same posted, according to law. Also, to have personal service made on the owners of the land through which the said proposed highway shall run.

The date of hearing report of viewers and complaint of said landowners, if any, shall take place on the 6th of April, 1909, at 2 o'clock P. M.

Q. Now, do you know if there is anything in the records, or any order made by the board of county commissioners of McHenry county, declaring that a public highway?

A. I do not.

Q. Further than what you have already testified to?

A. I do not.

Q. As a matter of fact, have you searched the records of your office for any orders, or for an order of the board of county commissioners declaring that opened up and dedicated to the public as a highway?

A. I have looked for such an order, but found none.

Q. As a matter of fact, you have made a pretty thorough search for such an order, have you not?

A. I have, for the order on that road and many others, and I have not found any. *It seems the board always quit when they got that far.*

It is very clear that the defendant could have enjoined the plaintiff from taking possession of the highway before the provisions of the statute had been complied with and the award of damages made, or in the proper case maintained an action of ejectment. 10 R. C. L. 228, 231; Diedrichs v. Northwestern Union R. Co. 33 Wis. 219; Bohlman v. Green Bay & L. P. R. Co. 30 Wis. 105; Southern R. Co. v. Hood, 126 Ala. 312, 85 Am. St. Rep. 32, 28 So. 662.

There is in short no escape from the conclusion of the supreme court of Nebraska when in the case of Kime v. Cass County, 71 Neb. 677, 101 N. W. 2, 8 Ann. Cas. 853, it said: "There are two vital matters disclosed thereby upon which the conclusion is based, both of which, we think, are justified by the record. The first is that no damages were appraised or provisions made for their payment before or at the time of the attempted establishment of the alleged public road in controversy. Under the Constitution of 1866 . . . as well as under that of 1875, . . . such omission defeated the alleged right to appropriate the land to a public use. If, as counsel for appellee contend, the Statute of 1866, under which the proceedings were had, contemplated that the right of the landowner should be treated as waived by failure to demand compensation before or at the time of the taking, we are of opinion that to that extent the enactment was void. If the legislature could rightly require of the landowner one affirmative and initiatory act as a condition precedent to obtaining damages, they might require of him any other, or a series of acts which might be difficult or onerous, or, in some circumstances, impossible of performance, and so the constitutional guaranty might thus be seriously impaired or wholly frittered away. We are of opinion that the spirit, if not the letter, of the Constitution, requires that the public seeking to

appropriate private property to its use should, unless damages have been waived by some affirmative and unequivocal act, take steps of its own motion to ascertain their amount and secure their payment, and that mere passive acquiescence by an individual in the appropriation of property, unaccompanied by any conduct indicative of affirmative assent thereto, should not, unless continued for the statutory period of limitations, be regarded as a waiver of his rights."

It may be true that where a property owner has stood by and allowed expensive improvements to be constructed upon his land, and the property to be taken for a public use, as where he allows a railway company to construct a line upon a public street and to equip and operate the same for a year, his only remedy will be an action for damages. See Louisville, N. A. & C. R. Co. v. Soltweddle, 116 Ind. 257, 9 Am. St. Rep. 852, 19 N. E. 111.

But be this as it may, there is no conclusive proof of any such standing by in the case at bar.

The record shows that the trail had been used for a number of years with the permission of the defendant, like so many of the roads and trails throughout North Dakota. This, however, did not preclude the defendant from contesting the right at any time until prescriptive rights had been acquired, and his acquiescence, after the proceedings which were taken by the board in the case at bar, was no different than it had been in the past.

In the case of Byer v. New Castle, 124 Ind. 86, 24 N. E. 578, it is held that "in proceedings to enjoin a town from opening a street," and where "it appeared that the record of the board of trustees failed to show that they accepted the report of the commissioners appointed to assess benefits and damages within twenty days from the filing of the same with the town clerk as" declared "by Revised Statute Ind. 1881, §§ 3370–3372 . . . , parol evidence was inadmissible to show that the trustees had actually accepted the report within the time prescribed." And this seems to be the general rule. See 1 Elliott, Roads & Streets, 3d ed. § 409. We do not, however, have to go so far as this in the case at bar, nor do we desire to express an opinion on the subject. It is sufficient to say that in the case at bar there is no pretense that any estimate of damages was ever made or that any final order was ever entered. The only testimony on the subject is by the

auditor. In answer to the question whether he had made a thorough search, he answered, "I have for the order on that road and for many others, and I have not found any. *It seems the board always quit when they got that far."*

In spite of the provision of § 1927, which provides that "in case the board having jurisdiction shall fail to file such order within twenty days they shall be deemed to have decided against such application," it may be that, if there were positive proof that the order for laying out the highway had been entered, the defendant would be estopped to deny the existence of the road, since he himself signed the petition. See 2 Elliott, Roads & Streets, 3d ed. § 733. The signing of the petition, however, did not estop him as to subsequent improper steps and irregularities not caused thereby. See 2 Elliott, Roads & Streets, 3d ed. § 733; McLauren v. Grand Forks, 6 Dak. 397, 43 N. W. 710.

The fact that one signs a petition for a highway which is to run through his land is in itself no waiver of the provisions of the statutes in relation thereto and under which alone it may be dedicated, and a person may well consent to the opening of a highway, but at the same time vigorously protest against his property being taken therefor without an award of damages. Propst v. Cass County, 51 Neb. 736, 71 N. W. 748; Lewis v. Lincoln, 55 Neb. 1, 75 N. W. 154.

The general rule of law in all cases of condemnation of course is that the damages shall be paid, or a finding be-made that none exist, before the property is actually taken. The constitutional provision is clear that "private property shall not be taken or damaged for public use without just compensation having been first made." And though this provision is, in North Dakota, somewhat modified by the words, "no right of way shall be appropriated to the use of any corporation other than municipal, until full compensation therefor be first made in money or ascertained and paid into court" (Const. § 14), this qualification merely applies to rights of way which have been already dedicated to a public use.

The statute, too, in the case at bar expressly provides that such damages "shall be assessed in the manner hereafter prescribed before the same (highway) is opened, worked, or used." Comp. Laws 1913, § 1929.

So far all of the members of this court are agreed. The majority,

however, though not the writer, are of the opinion that the injunction should be granted, and this on account of the delay on the part of the defendant, the fact that he himself signed the petition for the highway, and that he afterwards stood by and allowed the so-called Masteller bridge to be constructed, as well as the small bridge upon his own land.

The judgment of the District Court is therefore affirmed, but without prejudice to the defendant to file additional pleadings, and in this action to prove and recover his damages for the taking of his property, and the construction of the highway, if, in fact, any there have been.

ROBINSON, J.   I concur in result.