### OIL FIELDS & S. F. R. CO. v. SMALTZ.

No. 9301—Opinion Filed Feb. 10, 1920.

(Syllabus by the Court.)

**Railroads—Grant of Right of Way for Electric Road—Transfer to Steam Railroad—Damages to Grantor.**

Where a right of way has been secured for an electric railway under a general warranty deed with no reservations, and after the grading is completed, the right of way is sold by the traction company securing it, to a standard-gauge steam railway company, and the latter operates its trains over said right of way, the remedy of the owner of the land from whom the right of way was secured would be for damages, if any, to his adjoining lands resulting from operating the standard-gauge steam railway; and in estimating the damages, the value of the right of way should not be considered as an element of the damages sustained.

Error from District Court, Payne County; John P. Hickam, Judge.

Action by Charles A. Smaltz against the Oil Fields & Santa Fe Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed on condition of remittitur.

N. A. Gibson, J. L. Hull, T. L. Gibson, and Robert A. Lowry, for plaintiff in error.

E. G. Wilson, for defendant in error.

PITCHFORD, J. The defendant in error, plaintiff below, instituted this action in the district court of Payne county against the plaintiff in error, defendant below, for damages alleged to have been suffered by the plaintiff by reason of the construction of a standard-guage steam railroad through his lands. The plaintiff had executed a deed to the Cushing Traction Company for a right of way through the lands for the purpose of constructing and operating an interurban electric railway on and over said right of way between the towns of Cushing, Oilton, and Drumright. The petition alleged at some length certain representations and promises made by the traction company as to the advantages, conveniences, etc., accruing to the plaintiff by reason of the building of an electric railway; that by reason of the assurance of these advantages, he was induced to execute the deed for the right of way, but that after the same was secured and after the grading had been completed for the electric line, the construction company sold the right of way to the defendant railway company; that the defendant railway company purchased from the traction company with full knowledge of the fact that the right of way was secured from plaintiff for an electric road, and that it was originally understood between the traction company and the railway company that the former was to secure the right of way for the latter. It is also contended by the plaintiff that in the construction of the railroad, the defendant made deep cuts and high fills and failed to place under the roadbed sufficient culverts or any other sufficient means for draining the surface water, causing the surface water to

back and overflow large portions of the land adjacent to the roadbed. Various other items of damage were enumerated, which it is unnecessary to consider. Plaintiff contends that the deed executed by him to the traction company was for a right of way for an electric line, and that as a further inducement to plaintiff to execute said deed, the traction company executed and delivered a written stipulation by the terms of which it was agreed that whenever said right of way was not to be used as an interurban electric railway, the said deed was to become void and the right of way should immediately revert to plaintiff; that the plaintiff left said stipulation with the president of the said traction company for the purpose of having it copied for the files of his office, when it was to be returned to the plaintiff, but that the said stipulation has not been returned to him, and is now in the possession of said traction company or the defendant. The plaintiff further contends that as the right of way so granted has not been used for an electric line, but was sold to defendant and converted into a standard-gauge steam railroad, and as no rights had been granted by plaintiff for a road of this nature, the title to the right of way reverted to plaintiff on the theory of abandonment; and that the defendant railway company is liable for all damages sustained by the plaintiff; that when the traction company sold to the defendant the deed from the traction company conveyed no rights; that the traction company having abandoned the right of way for an electric line, it had no rights to convey, and that the defendant would be liable for all damages accruing, independent of the amount received by the plaintiff from the traction company.

The answer filed by the defendant was a general denial and a specific denial of the execution of the written stipulation set up in plaintiff's petition with reference to the reversion of the right of way upon failure to use it for an interurban railroad. We gather from the evidence that the grading had been completed by the traction company before the sale to the defendant company. The plaintiff received from the traction company for the right of way (being 6.74 acres) $75 per acre for the amount so deeded. The defendant contends that this amount should not be considered by the jury in estimating the damages, if any.

The court instructed the jury that if they found from a preponderance of the evidence that the right of way was procured by the traction company for the purpose of constructing and operating thereover an electric railway and not a standard-gauge steam railway, and that after so procuring said right of way, the traction company abandoned its purpose of constructing and operating an electric railway over said land and deeded such right of way to the defendant, thereby putting it out of the power of the traction company to construct and operate an electric railway, then and in that event such abandonment deprived the traction company of all right and interest in and to the right of way, except for the purposes for which the right of way was granted; and if the jury should find further that the right of way was not sold to the defendant to be used for an electric railway, and that said right of way was appropriated to the use and operation of a standard-gauge steam railway without the consent of the plaintiff and without condemnation proceedings, then such appropriation was unlawful and the verdict should be for the plaintiff in a sum not exceeding the amount asked for in plaintiff's petition. We think there was error in this instruction. While the plaintiff alleged a written stipulation as to reversion of the right of way in the event the same was not used for an electric line, the defendant specifically denied the execution of a stipulation of this nature. There is no evidence that notice of the existence of a stipulation of this character was ever conveyed to the defendant. In the instructions given by the court, this question was not submitted to the jury by reason of any stipulation, but the court charged, as a matter of law, that if the traction company failed to use the right of way for an electric line and the same was used for a standard-gauge steam railway, this latter use amounted to an abandonment.

We are not concerned with the stipulation, for the reason that it was never recorded, no knowledge ever having been conveyed to the defendant that such a stipulation had been executed; consequently, the question becomes one purely of law, for there is no pretense that the right of way was ever used for an electric line. While the deed executed by the plaintiff to the traction company was a warranty deed without any reservations and not indicating the purposes for which the lands were conveyed, yet the evidence is conclusive—in fact, the defendant practically confesses that it knew before buying from the traction company the purposes for which the right of way was secured from the plaintiff.

The cause was submitted to the jury under evidence as to the amount of damages sustained by the plaintiff by reason of the railroad going through his lands. The amount

of damages seems to have been based upon the difference between the value of the land before the railroad was built and its value after the road was completed. We are of the opinion that this is the correct element of damages. The right of way not having been used for an electric line, but being sold to the railroad when the grade was completed, the railroad assumed full control of the right of way and maintained the grade as constructed by the traction company, and was consequently liable to the plaintiff for damages resulting from the manner of constructing the roadbed, in failing to have the necessary culverts, etc. In other words, it would be liable for all damages as for an original taking.

The court further instructed the jury that they could take into consideration the market value of the land belonging to the plaintiff which the evidence showed was actually appropriated by the defendant for the purpose of its road, in the condition the same was at the time of such appropriation, including the value of all grades which they found thereon at the time of such appropriation; and as to the adjoining land not appropriated, they should take into consideration the market value of such land immediately before such right of way was taken and appropriated by defendant and the market value thereof immediately after the same was taken and used by the defendant for railroad purposes, and if they found from a preponderance of the evidence that the market value of such land was depreciated by the appropriation, occupation, and use of such right of way by the defendant, the plaintiff's damage would be the difference in the market value of such adjoining land immediately before and immediately after such appropriation and use. There would be no error in this instruction if the jury had been instructed not to consider the value of the land appropriated for the right of way. The plaintiff had already been compensated for the right of way. The jury returned a verdict in favor of plaintiff for $2,200. The value of the right of way should be deducted from the amount of damages as found by the jury. The rule seems to be that the owner of the land subject to public easement has no right to insist that the public use remain precisely the same, and if the original use is changed to another of the general character, there is no reversion, but in that event the owner would be entitled to damages sustained by reason of the change. In the instant case, as the electric road was, by the sale of the right of way, converted into a standard-gauge steam railway, the measure of damages would be as above stated. 10 R. C. L. 241. In Oechsli et ux. v. Washington Electric R. Co., 89 Wash. 587, 154 Pac. 1079, the court said:

"In any view of the case, the respondent is certainly in no worse position than it would have been had it entered upon the appellants' land and constructed the railroad without any deed, but with their knowledge. Being a public service corporation invested with the power of eminent domain, it could not be ejected from the land or enjoined from the operation of its road. In such a case, under the rule to which this court is committed, the appellants' only remedy would be to recover damages in the value of the land taken and for injury to the land remaining. Kakeldy v. Columbia & P. S. R. Co., 37 Wash. 675, 80 Pac. 205; Kincaid v. Seattle, 74 Wash. 617, 134 Pac. 504, 135 Pac. 820; Thorburg v. Hoquiam, 77 Wash. 679, 138 Pac. 304; Domrese v. Roslyn, 154 Pac. 140. But the respondent here entered and constructed its road under a grant of the right of way. Obviously and a fortiori, if it were conceded that it had violated the terms of the grant by permanently abandoning the intended use of electricity for that of steam, the appellants' remedy would be, as we have said, only damages, if any, to their land resulting from the added servitude."

If the contention of plaintiff is true, in that the traction company was acting for the railway company in securing the right of way for the latter company, then the case of Oeschsli et ux. v. Wash. Electric R. Co., supra, is directly in point.

The only evidence as to the value of the strip through the land constituting the right of way at the date of the sale to the defendant is found in the testimony of the witness R. D. Long, who testified the value of the same, taking into consideration the cost of the land grading, to be between seven hundred and fifty and one thousand dollars. We have no means of knowing what value the jury placed upon the right of way, as the verdict was for a lump sum. We do not believe that plaintiff should recover for the increase in value by reason of the construction of the roadbed; in other words, the plaintiff is asking that he be paid not only for the land taken for the right of way, but, in addition thereto, the cost of the work done thereon by the construction company in the way of grading, etc.

The judgment of the trial court is affirmed on condition that plaintiff enter a remittitur in the sum of $1,000; otherwise, the judgment is reversed and cause remanded for new trial.

RAINEY, V. C. J., and JOHNSON, McNEILL, and HIGGINS, JJ., concur.