[No. 1433. Decided July 16, 1895.]

MARIA OWEN AND NELS OWEN, *Respondents*, v. ST. PAUL, MINNEAPOLIS AND MANITOBA RAILWAY COMPANY, *Appellant*.

CONDEMNATION PROCEEDINGS — NECESSITY OF NOTICE — ESTOPPEL — EJECTMENT — AMENDMENT OF COMPLAINT.

Where a railroad company at the time of instituting condemnation proceedings for the appropriation of a right of way over certain lands has actual notice that a certain parcel thereof is in the possession of a certain person under claim of ownership, such person should be made a party to the proceedings in order to be bound,

although in fact the record title to such land may stand in the name of another at the time of the filing of the *lis pendens* notice of the condemnation proceedings, and the deed transferring title may not have been recorded until after the date of the filing of such notice.

A decree in condemnation proceedings appropriating certain land for right of way purposes is not binding on the owner when not a party thereto, nor is he estopped from setting up the invalidity of the proceedings from the fact that he was present at the hearing and gave testimony therein, when it was conceded on the hearing that no claim for damages in regard to that particular lot was involved.

In an action of ejectment it is not error to allow plaintiff upon the trial of the cause to amend his complaint so as to show that the land in controversy is community property.

In an action of ejectment a decree in condemnation proceedings awarding the land to defendant for right of way is no defense, when it appears that plaintiff was the owner of the land and had not been made a party to the condemnation proceedings.

*Appeal from Superior Court, Snohomish County.*

*Burke, Shepard & Woods,* for appellant:

A person or corporation condemning land is not affected by an unrecorded deed of which he has no notice, and good title is acquired by making the owner of record a party. Lewis, Eminent Domain, § 318; *Collingwood v. Brown,* 10 S. E. 868; *Cool v. Crommet,* 13 Me. 250; *Brown v. County Commissioners,* 12 Metc. 208; *Barre R. R. Co. v. Montpelier, etc., R. R. Co.,* 17 Atl. 923 (15 Am. St. Rep. 877). The appellant contends that by reason of the filing of its notice of pendency of action in the condemnation proceedings it acquired a right in lot 11 prior to the claim of the respondents upon an unrecorded deed, and that the decree of appropriation subsequently obtained related back to the time of the filing of the notice of the pendency of the action, so as to complete its title and give it priority over the unrecorded deed of the respondents. *Roach v. Riverside Water Co.,* 15 Pac. 776;

*Newsom v. Kurtz*, 5 S. W. 575; *Collingwood v. Brown*, 10 S. E. 868; *McMurtrie v. Riddell*, 13 Pac. 181; *Hayden v. Thrasher*, 9 South. 855; *Spencer v. Credle*, 8 S. E. 901.

*A. W. Frater*, for respondents:

Appellant did not do all that was necessary in the condemnation proceeding when it failed to make the respondents parties to the action, for the railway company well knew that respondents were interested parties, and had actual notice of their interest. It has been repeatedly adjudicated that notice must be given whether required by statute or not. Lewis, Eminent Domain, § 368; *Peoria, etc., Ry. Co. v. Warner*, 61 Ill. 52; *Commonwealth v. Peters*, 3 Mass. 229; *Hinckley et al., Petitioners*, 15 Pick. 447; *Strachan v. Drain Com'r.*, 39 Mich. 168; *Seifert v. Brooks*, 34 Wis. 443; *Ayres v. Richards*, 38 Mich. 214. Actual occupancy and visible possession is such evidence of notice that the parties would be required to be brought into court by due process of law. Any circumstance, such as would put a prudent man upon his guard, and from which actual notice may be inferred, is sufficient to require him to be made a party. *Brown v. Volkening*, 64 N. Y. 76; *Raynor v. Timerson*, 54 N. Y. 639. The legislature has no constitutional power to authorize property to be taken by eminent domain without notice and an opportunity to be heard. *Stuart v. Palmer*, 74 N. Y. 183; *Davidson v. New Orleans*, 96 U. S. 97; *Mulligan v. Smith*, 59 Cal. 206; *Wynehamer v. People*, 13 N. Y. 434.

The opinion of the court was delivered by

DUNBAR, J.—This is an action in ejectment brought by Maria Owen and her husband, Nels Owen, against the St. Paul, Minneapolis and Manitoba Railway Com-

pany.   It is alleged that the plaintiffs had the right to
immediate possession of the land, and that the de-
fendant was in possession and wrongfully withheld
the same. from plaintiffs.   The prayer of the complaint
was that the plaintiffs recover from the defendant the
possession of said land, and all thereof, with the ap-
purtenances, and their costs and disbursements.   The
answer of the defendant denied the material allega-
tions of the complaint except that the defendant was
in possession of the land in dispute, which was lot
eleven in block three of Highland Park Addition to
Sultan City, and for an affirmative defense pleaded
that on or about April 23, 1892, proceedings were be-
gun in the superior court of Snohomish county by the
defendant against one Almarion W. Graves and the
American Mortgage Company to condemn and appro-
priate to the use of the company a strip of land across
Highland Park Addition, which included said lot
eleven in question in this suit, and alleged that a
notice of the pendency of this condemnation proceed-
ing was duly filed in the office of the county auditor
of Snohomish county on the 23d day of April, 1892,
by which due notice was given to the said Almarion
W. Graves and the American Mortgage Company, and
to all other persons whatsoever, that said suit had.
been begun; set up the paragraphs and determination
of said condemnation proceedings at length,—that a
jury was summoned, a trial had, and that the jury re-
turned a verdict for the sum of $1,342, awarding the
same to the said Graves for the taking of the said strip
of land described in the petition, including said lot
eleven in question in this suit,— alleging that a decree
of appropriation followed, and that by said decree of
appropriation the defendant acquired title to said lot;
and also alleged fraud and collusion between the

plaintiffs and Graves by which they sought to compel
the defendant to pay a greater price for the right of
way than it was fairly worth, and that the plaintiffs
never had acquired any title or interest whatsoever in
said lot, and that whatever interest they did have was
subordinate to the title acquired by the railroad com-
pany in said condemnation proceedings, and the com-
plaint prayed that the action might be dismissed at
the cost of the defendant.    The reply of the plaintiffs
denied each and every allegation contained in the
separate and affirmative answer of the defendant.    A
jury was waived and the case was tried before the pre-
siding judge and judgment rendered in favor of
respondent in accordance with the prayer of the
complaint.

   Many points are discussed by appellant in this case
which it seems to us are not pertinent to the case, but
there are one or two main propositions upon which
the cause must depend: first, was the respondent in
any way bound by the decree of the court in the con-
demnation proceedings pleaded by appellant?   If the
court in that case had jurisdiction of the subject mat-
ter and jurisdiction of these respondents, it cannot be
denied that they are estopped from bringing this
action, if it did not, then the respondents had a legal
right to bring this action in ejectment, and under the
testimony in this case they should prevail.    It is con-
ceded that no notice was directly given to respondents
in the condemnation proceedings, and that they are
not made parties to the action.    The *lis pendens* in the
proceedings was filed April 23, 1892, and the condem-
nation suit was tried May 26, 1892.

   The testimony in this case shows that the respond-
ents made a verbal agreement with Graves to pur-
chase this lot in question, in the month of April, 1891,

that they at that time paid $5 in money, the agreed price of the lot being $100, entered upon possession of the lot, and made valuable·improvements thereon, to-wit, a livery stable, the possession of which they maintained until they were ousted by the railroad as a result of the order of the court in the condemnation proceedings above referred to. February 19, 1892, another payment of $20 was made, and on April 22, following, a payment of $80, which completed the payment for the lot, and on that day a deed was executed in due form of law from Graves to the respondents for said lot, which deed was recorded on May 2, 1892.

The contention of appellant is that by reason of the filing of its notice of pendency of action in the condemnation proceedings it acquired a right in lot eleven prior to the claim of respondents upon an un-recorded deed, and that the decree of appropriation subsequently obtained on June 4, 1892, related back to the time of the filing of the notice of the pendency of the action on April 23, 1892, so as to complete its title and give it priority over the unrecorded deed of respondents.

We do not think this contention can be sustained under the facts in this case, for, whatever may have been their rights under the statute in the case where no actual notice of the respondents' interests existed, the record in this case overwhelmingly shows that appellant, the railroad company, through its authorized agents had *actual* notice of the title and claim of these respondents, and that being the case, appellant cannot rely upon the lack of constructive notice provided for by the statute, for where actual occupancy and visible possession is proven notice is presumed, and the parties in a case of this kind would require to be brought into court by a due process of law. This, outside of

all questions of the constitutional power of the legislature to authorize property to be taken by eminent domain without notice and an opportunity to be heard. Not only were circumstances proven in this case such as would put a prudent man on his guard and from which actual notice might be inferred, but the testimony shows that actual notice was given, and that the right of way agents of the railroad company sought these respondents out and made propositions to them looking towards buying the right of way through this lot, prior to the time the condemnation proceedings were instituted. Respondent Owen testified that Col. Crooks, the main right of way agent of the company, agreed to settle with him for this lot. It seems that at the time he had some conversation with him with reference to purchasing another house and lot on the east side of the river, but the witness positively states that he also said that he would settle for the lot which the barn was on—the lot in dispute; and Mr. Sherwood, a disinterested witness, testifies that George James, a right of way agent of appellant, asked him to make Mr. Owen an offer of another lot in place of the one in dispute, and on a cross-examination, in answer to the question of appellant's counsel whether or not the lot he talked about was the lot where respondent's house was on the east side of the river, he replied, "No; the lot across the river where the barn is." And again, in answer to a question of the same import, namely, "Was not that what you had your conversation with Mr. James about?" he replied, "No. The conversation was with regard to the barn property." And the witness testified that this conversation and this offer occurred prior to the commencement of the condemnation proceedings. Mrs. Owen also testified substantially to the same effect as to the offer made by the right of way

agent.   There is a feeble attempt on the part of the witness Crook to contradict these proofs on the part of the respondents, though he says that he thinks that the respondents made claim to this lot about the time the proceedings were commenced.   In answer to the question, "The first you heard, then, that they claimed any title to the land, was in the condemnation proceedings?" he said, "Yes, sir.   When we talked of commencing the proceedings, and I think about the time when they were first commenced, as near as I can recollect."   In answer to another question, he says, "The first talk that I remember having with him was about the time the condemnation proceedings were commenced.   He told me that he owned a barn and, I think, that he owned a lot at that time, and I asked him what he considered them worth, and made a proposition to buy the barn."   So that it seems even from the appellant's own witnesses that really before the commencement of proceedings, namely, at the time they talked of commencing them, that they were notified of respondents' ownership, and really made a proposition to respondent Owen to buy the property from him.

Conceding that the testimony of witness Crook is absolutely true, it was the duty then of appellant, by supplemental proceedings, to have made these respondents parties to the action, but under the testimony in this case the court had a right to conclude that appellant had notice of the ownership of respondents prior to the commencement of the condemnation proceedings.

It is urged by appellant that respondents ought to be now estopped from the fact that respondent Nels Owen was in attendance at court at the trial of the railroad company with Graves, and that he gave testimony

with regard to the value of the strip of land sought to be condemned. It appears from the evidence, however, and is conceded by the statement made to the court below by the counsel for appellant that Graves's attorney in that case announced that Graves was not the owner of this particular lot, and that he made no demands for damages for its condemnation. Under such an announcement we do not think that the respondent Nels Owen was under any obligation to intervene in the case, but he was justified in resting upon his constitutional right to be notified and have his day in court before his property should be taken from him. It is also claimed that respondents should be estopped from the fact that they knew of the location of this right of way, and permitted the railroad company to take possession. We do not think the evidence justifies this conclusion. It was no doubt known in the fall of 1891 that the railroad company would build its road through the city of Sultan, but there is nothing to show that the definite location of the line of the road was located or known to the citizens of that city.

We do not think that the court abused its discretion in allowing respondents to modify their complaint so as to show that the property was community property. This, under the circumstances of the case, was in furtherance of justice, and appellant was in no way injured by the change allowed. There was no attempt on the trial of the cause to prove the allegations of fraud and collusion made in the answer, so that it appears to us upon an examination of the whole record that respondents entered into this agreement to purchase this lot in good faith; that they entered into possession of the same, and made valuable improvements upon it, and received title to the same be-

21 — 12 WASH.

fore the comencement of the condemnation proceedings; that they had no notice of such proceedings; were not in any way made parties thereto; had no opportunities to litigate their rights; and that appellant had actual notice of the title and ownership of respondents; and that therefore the respondents were in no way bound by the judgment rendered in the condemnation proceedings; that as to them, such proceedings were actually void and without effect, and that such judgment, therefore, was no defense to their action in ejectment.   The judgment will therefore be affirmed, and the appellant will be allowed thirty days from the entering of this judgment to carry into effect the condemnation proceedings provided for in the judgment below, or in other words, the conditions of said judgment will commence to run from the date of this judgment.

HOYT, C. J., and SCOTT, ANDERS and GORDON, JJ., concur.