[No. 6499–1.   Division One.   July 9, 1979.]

JOSEPH BRAZIL, *Respondent,* v. THE
CITY OF AUBURN, *Appellant.*

*John B. Bereiter* and *Duncan A. Bonjorni,* for appellant.

*Miracle, Pruzan & Nelson* and *Howard P. Pruzan,* for respondent.

SWANSON, A.C.J.—The City of Auburn, defendant below, appeals a judgment ordering that it vacate and discontinue use of property owned by respondent/plaintiff Joseph Brazil and pay Brazil rents of $5,875. The City contends the trial court lacked jurisdiction to grant such relief. We disagree and affirm the judgment.

Joseph Brazil purchased the subject property, a 20–foot by 100–foot parcel located in the city of Auburn, pursuant to a treasurer's tax deed dated December 5, 1969. In 1971, the City paved the property in the course of expanding an existing road. At that time and up until 1977, Brazil had not located the property. The City did not contact Brazil prior to paving the property.

In 1977, Brazil filed suit asking that the City be ordered to discontinue use of his property and to pay reasonable rentals for past use. The City answered by way of general denial and affirmatively alleged it had acquired title to the property by adverse possession. After trial, the court orally held the City had failed to prove adverse possession and that Brazil was entitled to past rents of $1,500 per year.

On appeal, the City argues the trial court lacked jurisdiction to grant injunctive relief and damages or, in the alternative, Brazil's complaint failed to state a claim upon

which relief could be granted.[1] The City contends an action for inverse condemnation is the sole available avenue of recovery following a public taking. Thus, the issue before us may be posed as follows: Assuming proper subject matter and personal jurisdiction, may a cause of action lie in a property owner for injunctive relief and/or damages after an arbitrary taking of real property for public use?[2]

The City reasons that unless a municipality is enjoined prior to action, it may effectively exercise its powers of eminent domain by an arbitrary taking. When such occurs, the City continues, monetary compensation through an inverse condemnation action serves as the only remedy of the party owner. In support of this rationale, the City cites such cases as *Domrese v. Roslyn,* 89 Wash. 106, 154 P. 140 (1916), and *Kincaid v. Seattle,* 74 Wash. 617, 626, 134 P. 504 (1913) (wherein the court held, "[W]here the petitioner is about to take possession without condemnation, injunction is a proper remedy; where there has been a taking and the public function is being exercised, the only remedy is to take compensation.").

We find the City's position too restrictive. While an action for inverse condemnation is the common remedy for

---

[1]The City originally also challenged the trial court's conclusions regarding the questions of adverse possession and reasonable rental value, but abandoned both positions at oral argument on appeal because the trial proceedings had not been transcribed and, thus, no record could be forwarded for review.

[2]The parties contest whether this question is properly before us due to disagreement over when the City first raised the issue. The City contends it offered its theory at trial and in a motion for reconsideration. Brazil avers the City presented the theory for the first time after delivery of the oral opinion and therefore should be precluded from now arguing what he terms an affirmative defense. *See* CR 8(c). Because of the state of the record before us—or, more accurately, the lack of an adequate record—we choose to dispose of the question substantively rather than procedurally.

We also note the City incorrectly terms the issue to be jurisdictional. Jurisdiction does not turn on a court's ultimate decision.

[J]urisdiction does not depend upon a correct decision. The court, having jurisdiction, has the power to decide wrongly as well as rightly. *State ex rel. Troy v. Superior Court,* 38 Wn. (2d) 352, 229 P. (2d) 518 [(1951)].

*State ex rel. Green v. Superior Court,* 58 Wn.2d 162, 164, 361 P.2d 643 (1961).

an arbitrary taking, it is not the sole potential remedy available to a property owner. In 6A J. Sackman, *Nichols' The Law of Eminent Domain* § 28.3 (3d rev. ed. 1976), the following alternative avenues of recovery are recognized:

When . . . property is taken or injured under color of eminent domain, and the taking or injury is unlawful, . . . the owner of the land so taken or injured . . . may recover his damages in an action of trespass at common law.

*Nichols' The Law of Eminent Domain, supra* at 28–74.

So also, if land is actually occupied under proceedings defective for any of the reasons mentioned, the owner may recover possession by an action of ejectment, writ of entry or other appropriate proceeding.

*Nichols' The Law of Eminent Domain, supra* at 28–78.

It has been held also that an uncompensated taking of land constitutes a tort. It has been characterized as a trespass or a nuisance.

*Nichols' The Law of Eminent Domain, supra* at 28–82.

In several jurisdictions, recovery may be had on the basis of an implied contract to pay for the taking. Based neither on contract nor tort is an action in inverse or reverse condemnation.

*Nichols' The Law of Eminent Domain, supra* at 28–86. Also,

[I]t is well settled that in all cases in which possession of land has been wrongfully taken from the owner under color of eminent domain, whether the supposed taking is of a fee or only of an easement, the owner may recover possession in an action of ejectment.

*Nichols' The Law of Eminent Domain, supra* at 28–101.

Washington case law supports the concept of a diversity of potential grounds for recovery for a property owner subjected to an arbitrary taking. *See Anderson v. Port of Seattle*, 49 Wn.2d 528, 531, 304 P.2d 705 (1956) ("[T]he action of trespass is an appropriate remedy where an entry has been made before the right to enter has been perfected in the manner provided by law."). *Engstrom v. Edendale Land Co.*, 77 Wash. 658, 138 P. 302 (1917) (staying an

action for ejectment 30 days to allow the defendant to bring a condemnation suit). *See also Allen v. Transok Pipe Line Co.*, 552 P.2d 375 (Okla. 1976); *Ossman v. Mountain States Tel. & Tel. Co.*, 184 Colo. 360, 520 P.2d 738 (1974).

■ We believe the foundation for the *Domrese* line of cases relied upon by the City lies in estoppel or waiver: that a property owner who acquiesces to an arbitrary taking of his property will be limited to monetary compensation. Thus, in *Ellensburg Ice & Cold Storage Co. v. Ellensburg*, 118 Wash. 647, 651, 204 P. 776 (1922), the court permitted an action for injunction and damages, noting:

> This case is also to be distinguished from the *Domrese* and other like cases, because in the *Domrese* case there had been an actual taking . . ., and there were elements of acquiescence and waiver on the part of the riparian owner. In the statement which constitutes the facts before us in this case, there are no elements of acquiescence and waiver.

*See Nichols' The Law of Eminent Domain, supra* § 28.321[1], at 28–106. Here it is undisputed that Brazil was unaware of the location of his property and thus could not have acquiesced to its taking. Brazil therefore not only stated a claim when he requested a discontinuance of use and reasonable rents, but had a right to recover thereupon.

The trial court's judgment is affirmed.

WILLIAMS and ANDERSEN, JJ., concur.

Reconsideration denied August 20, 1979.

Review granted by Supreme Court November 30, 1979.