[No. 46577.   En Banc.   May 8, 1980.]

JOSEPH BRAZIL, *Respondent,* v. THE CITY OF AUBURN, *Petitioner.*

*Duncan A. Bonjorni* and *John B. Bereiter,* for petitioner.

*Howard P. Pruzan* (of *Miracle, Pruzan & Nelson*), for respondent.

ROSELLINI, J.—This action was brought in 1977 by the respondent, who holds record title to a strip of land 20 by 1,000 feet in area located within the city of Auburn. He sought to enjoin the City's use of this property as a public roadway and to recover its rental value from the time the City had paved it in 1971. The City answered that title to the property was in the public, by reason of prescriptive user and adverse possession.

The suit was tried to the court, which, after hearing the evidence, announced its judgment in favor of the respondent. Before the findings, conclusions and judgment were

signed, the petitioner moved for reconsideration, contending for the first time that the City could not be ordered to vacate the property and that the respondent's only available remedy was an action for inverse condemnation. The court was furnished a brief in which the cases of *Kincaid v. Seattle,* 74 Wash. 617, 134 P. 504 (1913), *Domrese v. Roslyn,* 89 Wash. 106, 154 P. 140 (1916), and *Habermann v. Ellensburg Gas & Water Co.,* 100 Wash. 229, 170 P. 571 (1918), were cited.

The motion for reconsideration was denied. The court entered judgment for the respondent for an amount which it found to be the rental value of the land during the period not barred by the statute of limitation. It further ordered the petitioner to vacate and discontinue use of the premises forthwith.

The proceedings in the lower court were not recorded, and the case came before the Court of Appeals, Division One, upon the findings of fact, no agreed statement having been settled upon. The petitioner contended that the lower court lacked jurisdiction to enter any judgment because the wrong remedy had been sought by the respondent. That court affirmed the judgment, citing statements found in 6A J. Sackman, *Nichols' The Law of Eminent Domain* § 28.3 (3d rev. ed. 1978), which report the remedies which have been afforded in various courts for arbitrary taking of private property. The case is before this court for review of that decision. *Brazil v. Auburn,* 23 Wn. App. 672, 598 P.2d 1 (1979).

The Court of Appeals correctly limited its review to the question whether the findings of fact support the conclusions of law and judgment. It was also correct in rejecting the petitioner's theory that the lower court lacked jurisdiction to enter a judgment in the case. If the judgment was unwarranted, the flaw was not that the court lacked jurisdiction but that it erred in decreeing the remedy.

The findings show that the respondent purchased the property in question at a tax sale in 1969, that it is located

in an outskirt of the city of Auburn; and that prior to 1970, when it was paved as part of a roadway, it was used permissively as a means of access to residences and a lake in the area. The petitioner has been using the premises as a roadway at all times since paving it in 1971. The reasonable market value of the property was found to be $15,000.

That a street or roadway is a public use is established beyond cavil. *In re Bellevue,* 62 Wn.2d 458, 383 P.2d 286 (1963); *Little v. King County,* 159 Wash. 326, 293 P. 438 (1930); *State ex rel. Flick v. Superior Court,* 144 Wash. 124, 257 P. 231 (1927). In the latter case, we said, at page 130:

> The taking of land for a public highway is taking it for a public use; and the necessity of so taking land, decided by public administrative authorities having jurisdiction such as is possessed by county commissioners in this state, is binding on the courts in the absence of some showing of actual fraud on the part of such authorities.

This rule of conclusiveness has since been narrowed to permit an attack based upon a showing of constructive as well as actual fraud. *See Tacoma v. Welcker,* 65 Wn.2d 677, 399 P.2d 330 (1965); *King County v. Theilman,* 59 Wn.2d 586, 369 P.2d 503 (1962); and *In re Bellevue, supra. Compare: Selde v. Lincoln County,* 25 Wash. 198, 65 P. 192 (1901), and *State ex rel. Schroeder v. Superior Court,* 29 Wash. 1, 69 P. 366 (1902), holding that a judicial determination as to the public utility of a county road which has been authorized by the Board of County Commissioners is not a prerequisite to the appropriation of land therefor under the power of eminent domain.

There is no suggestion here that there was any fraud, actual or constructive, involved in the petitioner's decision to pave the street in question.

The property here in question has been put to a public use since 1971, and there is no dispute that the City has intended that use to be permanent. The question then is, What remedy is available to the dispossessed owner?

This court has held that in the interest of public policy, the State or a municipal corporation, or a corporation exercising the privileges of sovereignty, will not be ousted if it has wrongfully taken possession of the land and is, in fact, devoting it to a public use. The owner will be left to his remedy at law to recover damages. *Habermann v. Ellensburg Gas & Water Co., supra; Thorberg v. Hoquiam,* 77 Wash. 679, 138 P. 304 (1914); *Kincaid v. Seattle, supra; State ex rel. Peel v. Clausen,* 94 Wash. 166, 162 P. 1 (1917); *Domrese v. Roslyn, supra,* and cases cited therein; and *Irwin v. J.K. Lumber Co.,* 102 Wash. 99, 172 P. 911 (1918).

In the leading case of *Kincaid v. Seattle, supra,* an action for damages to the plaintiff's real property by reason of the grading of a street, the City sought to escape liability because the plaintiff had not complied with its ordinance requiring the filing of claims within a specified time. This court said of this contention:

> The constitution does not give the right to take; that is inherent in the state. Its only office is to define the limitations to be put upon its exercise; that is, that no property shall ever be taken without compensation.
>
> Having the right to take, a municipality, whatever its procedure or even lack of procedure, is not a wrongdoer. The remedy of the one whose property is taken is immaterial so long as it leads to compensation as provided in the constitution. The city is bound to make compensation under a compact no less formal than the constitution itself, and it cannot defeat this constitutional right by a charter provision or an ordinance, nor can the legislature take it away by any arbitrary requirement, although we may admit that it could, as in all other cases, fix a time within which an action must be brought to recover damages that have not been first ascertained and paid. The city must be held to adopt the guarantee of the constitution and make it its promise, for we know of no law that will impute to the city, when exercising the sovereign power of the state, a wilful intention to disregard the right of a citizen.
>
> . . .
>
> So it will be seen that, where the petitioner is about to take possession without condemnation, injunction is a

proper remedy; where there has been a taking and the public function is being exercised, the only remedy is to take compensation. Whether we call the taking a tort, or say that the claimant can waive the tort and sue on an implied contract, it makes no difference; the law is the same.

*Kincaid v. Seattle, supra* at 621, 626, quoted with approval in *Wilshire v. Seattle,* 154 Wash. 1, 4–5, 280 P. 65 (1929).

The principle was recognized in *Wandermere Corp. v. State,* 79 Wn.2d 688, 697, 488 P.2d 1088 (1971). That action was brought by an owner of land adjacent to a proposed state highway drainage ditch, who alleged that the presence of the ditch would adversely affect the value of his land. We said there that the preliminary work which had been done before his action was begun would not have defeated his right to an injunction, prohibiting the State from further construction until such time as his damages had been ascertained and paid. However, because the trial court had granted and then dissolved a preliminary injunction, after which the construction of the ditch had been completed, we declared that we would not, by mandate, compel the destruction of the ditch. We cited the rule that, upon the denial of a temporary restraining order, the defending party may assume that it has the right to proceed with the construction sought to be enjoined, as well as the principle that a governmental body having the power of eminent domain does not act "illegally" in the strict sense if it takes private property for a public use before compensation is made. We noted also that the owner's damages could be fully adjudicated upon a remand.

In *Domrese v. Roslyn,* 89 Wash. 106, 154 P. 140 (1916), the plaintiff had granted a right–of–way to the defendant to lay a pipeline across her property, through which it conveyed water from a creek above her land to supply its water works. After the system had been in operation for some time, she brought an action to enjoin the taking of water, alleging that the defendant City was interfering with her riparian rights. We held that the trial court properly denied

her this relief, because in such cases, injunction will not lie, citing *Kakeldy v. Columbia & P.S. R.R.,* 37 Wash. 675, 80 P. 205 (1905). There it was said that

a party who acquiesces in the construction and operation of a public utility is estopped to maintain ejectment or a suit for injunction, but will be left to his action for damages.

In *Kincaid v. Seattle,* 74 Wash. 617, [626,] 134 Pac. 504, 135 Pac. 820 [(1913)], the deeper principle is adverted to; that is, that the wrong lies not in the taking but in the manner of the taking, for the taking, whether done directly or indirectly, is an exercise of a sovereign power. We held squarely that where one having a right to condemn property

". . . is about to take possession without condemnation, injunction is a proper remedy; where there has been a taking and the public function is being exercised, the only remedy is to take compensation.

89 Wash. at 107.

*Kincaid* makes it clear that just as the owner has the right to be compensated, the State or other body having the power of eminent domain has a right to compensate and keep the property. It was in that case that the theory of "inverse condemnation" was established, this court holding that the governmental body's action is not a tort and is not protected by nonclaim statutes or ordinances.

Inverse condemnation has been defined as "the popular description of an action brought against a governmental entity having the power of eminent domain to recover the value of property which has been appropriated in fact, but with no formal exercise of the power."

*Highline School Dist. 401 v. Port of Seattle,* 87 Wn.2d 6, 8 n.1, 548 P.2d 1085 (1976); *Martin v. Port of Seattle,* 64 Wn.2d 309, 391 P.2d 540 (1964), *cert. denied,* 379 U.S. 939, 13 L. Ed. 2d 610, 85 S. Ct. 701 (1965).

We observed in the *Highline* case that when private property rights are taken from the individual and are conferred upon the public for public use, eminent domain principles are applicable and tort theories are inappropriate. And in *Little v. King County, supra* at 332, speaking of

the right of the county to offset benefits to abutting owners against the damages assessed, regardless of how the land was appropriated, we said: "The theory is that the state, or its subdivisions, in appropriating land for highways, is never a trespasser, nor a tort–feasor."[1] *Accord, Thorberg v. Hoquiam,* 77 Wash. 679, 138 P. 304 (1914).

In *Great Northern Ry. v. State,* 102 Wash. 348, 173 P. 40 (1918), the State attempted to establish its immunity from liability for damage inflicted by its contractor upon the plaintiff's land, claiming the damaging was tortious. But this court said:

> When taking private property for a public use, the state acts in its sovereign capacity. *Gasaway v. Seattle,* 52 Wash. 444, 100 Pac. 991, 21 L. R. A. (N. S.) 68 [(1909)]. It goes not as a trespasser, inspired by selfish or unlawful motive, but as one taking without malice or intent to do wrong, and presumptively for the public good. Under the statute, it cannot put on the cloak of a tort feasor if it would. It cannot plead a wilful wrong to defeat a just claim. The action for damages for land taken without compensation is usually spoken of and is in its nature one of trespass, but it is not strictly so. If the state or its agent, in the prosecution of a public work, takes no more than is necessary and prosecutes its work without negligence it is neither a trespasser nor a tort feasor [citing *Kincaid v. Seattle, supra*].

102 Wash. at 353.

Nevertheless, some resort to tort theories has, in the past, been found appropriate in resolving procedural questions with respect to the landowner's right of compensation. For example, in *Aylmore v. Seattle,* 100 Wash. 515, 171 P. 659 (1918), where the plaintiff's land had been appropriated for a public street, without compensation having been

---

[1]The legislature has taken cognizance of the fact that a City sometimes takes possession of private property, inadvertently or otherwise, without first making compensation, and has expressly authorized the bringing of a subsequent action to determine just compensation. RCW 8.12.540. The compensation is to be determined in the same manner as it would have been had the action been instituted before the taking. This court's holdings with respect to inverse condemnation are in harmony with that action.

made, it was held that the plaintiff's action for compensation was governed by the 10–year statute of limitation. In order to make that statute applicable, this court was forced to conclude that his action was in the nature of ejectment, since the 10–year statute applies only to "[a]ctions for the recovery of real property, or for the recovery of the possession thereof". RCW 4.16.020. It was recognized, however, that the judgment entered should have the effect only of compelling payment of compensation rather than forcing ejection of the defendant from the property. And it appears that whenever this court has seen fit to approve a remedy of ejectment, or injunction, where the power of eminent domain was present, enforcement of the judgment has been delayed to permit the defendant to avoid it by bringing an action to condemn the land, and/or paying just compensation. *See Ellensburg Ice & Cold Storage Co. v. Ellensburg,* 118 Wash. 647, 204 P. 776 (1922) (taking not complete); *Engstrom v. Edendale Land Co.,* 77 Wash. 658, 138 P. 302 (1917); *Owen v. St. P., M. & M. Ry.,* 12 Wash. 313, 41 P. 44 (1895).

In cases where the remedy of injunction has been denied, this court, like courts in other jurisdictions, has based its judgment upon varying factors, such as acquiescence; the fact that the work has been completed to the public good; the fact that the taking or damaging will not cause any peculiar or special injury to the plaintiff, or will not cause substantial damage to the plaintiff; the fact that the granting of an injunction will cause great injury to the defendants and a serious inconvenience to the public, without a corresponding advantage to the complainant; or the fact that condemnation proceedings are pending or contemplated. *See* Annot., *Injunction against exercise of power of eminent domain,* 133 A.L.R. 11, 118–28 (1941).

The Court of Appeals was of the opinion that injunction will be denied only where there are elements of estoppel or waiver present. While there are often elements of acquiescence or estoppel present where the plaintiff has not protested the building of the public improvement until after

its completion, our cases have emphasized that this is not the controlling factor. As we pointed out in *Kincaid v. Seattle, supra,* once the taking is complete and the property is being used for public purposes, injunction is not an appropriate remedy. Since the public body has the right to take private property for such use, and since to require it to abandon an improvement or activity which serves the public's needs would result in a much greater hardship and inconvenience to the public than that which would be suffered by the plaintiff if he is forced to sell his land at its fair market value, just compensation is his sole remedy.

The opinion of the Court of Appeals states:

> Washington case law supports the concept of a diversity of potential grounds for recovery for a property owner subjected to an arbitrary taking.

*Brazil v. Auburn,* 23 Wn. App. 672, 675, 598 P.2d 1 (1979).

*Anderson v. Port of Seattle,* 49 Wn.2d 528, 304 P.2d 705 (1956) and *Engstrom v. Edendale Land Co., supra,* are cited. *Anderson* was a suit by a number of property owners whose properties were adversely affected by an airport operation nearby. It was shown that frequent flights of airplanes at low altitudes over the plaintiffs' lands had diminished their rental and market value. This court declared that a damaging of property by a body having the power of eminent domain may be either permanent or temporary. When the injury is permanent, we said, the measure of compensation is the difference between the value of the land before the injury and immediately after; but when the injury is not permanent, the measure of compensation is the reasonable expense of restoring the land and the loss of income pending such restoration within a reasonable time. There, it was proved that the injury was permanent, and thus the reduction in market value was the appropriate measure of damages. The plaintiffs had sold their properties to the Port of Seattle while the action was pending, receiving the fair cash value with no allowance for depreciation. They urged that they were also entitled to recover temporary damages, based upon the diminished rental

value. We rejected that theory, holding that the plaintiffs had been fully compensated when they received the fair market value of their land.

The Court of Appeals quoted the following from *Anderson v. Port of Seattle, supra* at 531:

> [T]he action of trespass is an appropriate remedy where an entry has been made before the right to enter has been perfected in the manner provided by law.

*Brazil v. Auburn, supra* at 675. In the next sentence of that opinion, however, we made it clear that the compensation to be awarded is governed by the nature of the taking or damaging and not by the plaintiff's theory of recovery.

Thus, the *Anderson* case does not stand for the proposition that, where there has been a permanent taking of property by a body having the power of eminent domain, the owner may elect to treat the taking as temporary and sue for lost rents and injunctive relief.

The other Washington case cited by the Court of Appeals, *Engstrom v. Edendale Land Co., supra,* was an action in the nature of ejectment, brought by an owner of land in eastern Washington against his neighbor, who had constructed an irrigation flume across the former's property. It appears that for at least 20 years, such a ditch had been maintained by the defendant's predecessors, and he had arrived at an oral agreement with the plaintiff to relocate the flume. However, it was not constructed according to the plaintiff's wishes, and the ejectment action followed. The lower court found that the plaintiff had suffered damages of $50 and that his rights to the property covered by the flume and to the waters of the creek from which it was supplied were superior to those of the defendant. It found that the defendant had agreed to construct the new flume 1 foot below the surface of the soil, and decreed that unless the flume was lowered to that depth within 30 days, the defendant should be ejected.

It was not argued on appeal that the defendant had a right to condemn an easement, which should have been

recognized by the lower court. Rather, it was the theory of the defendant that, under the oral contract, it had the right to construct a new flume in the same manner as the old, or in the alternative that it had the right to construct another flume in the former location. This court, ignoring those arguments, held that the defendant, as a carrier of irrigation water, was entitled to condemn land of the plaintiff for flume purposes. It stayed the damage judgment and ejectment order for 30 days to permit the defendant to bring a condemnation action.[2]

Neither of these decisions offers support for the proposition that where there has been an appropriation of land for a public use which is permanent in nature, the landowner has an unqualified right to recover possession and lost rental value. Implicit in each is a recognition of the principle that judicial remedies should not be fashioned to frustrate the interests of the public which are served by the exercise of the right of eminent domain. In the *Engstrom* case, ejectment and temporary damages were authorized only in the event the defendant elected not to condemn an easement as provided by statute.

The remedial device utilized in *Ellensburg Ice & Cold Storage Co. v. Ellensburg, supra, Engstrom v. Edendale Land Co., supra,* and *Owen v. St. P., M. & M. Ry., supra,* which uses the threat of ejectment to force the defendant to either condemn the land or abandon the public use, is particularly appropriate where the taking is not complete. It also has some usefulness where the taking is complete but the market value of the land has not been established. In such a case it may be reasonable to require the defendant to bring its condemnation action, in order to retain possession.

In a case such as this, however, where the public use is established and conceded and the market value has been

---

[2]The defendant no doubt regarded this as something of a pyrrhic victory. Had it prevailed on its theory of adverse possession, it would not have had to purchase an easement.

ascertained, the only appropriate remedy is a judgment for the market value of the land taken.

It is true that neither the petitioner nor the respondent asked the court to award the respondent the market value of the property. The latter insisted in the courts below and still insists that he is entitled to an injunction and rental value for the period the land has been in the possession of the City, to the extent that such remedy is not barred by the statute of limitation. The petitioner, on the other hand, insists that because the respondent sought the wrong remedy, the court had no jurisdiction to grant him any relief. We have shown that the respondent is not entitled to the remedies which he seeks. But this does not mean that the lower court could not and should not have awarded him the damages to which he was entitled. Those damages were proven in the action, and the court made a finding as to the amount of such damages. The rule is that once a court of equity has properly acquired jurisdiction over a controversy, such a court can and will grant whatever relief the facts warrant. *Zastrow v. W.G. Platts, Inc.,* 57 Wn.2d 347, 357 P.2d 162 (1960). Upon the established facts, there is only one remedy available to the respondent, and that is the remedy which should be decreed in this action.

The trial court erred in denying the petitioner's motion for reconsideration, which correctly presented the law for its consideration, and the Court of Appeals was in error in sustaining the lower court's judgment. The property here having been put to a public use, and the taking having been complete, the sole remedy available to the respondent was compensation for the taking. The measure of damages is the fair market value of the property at the date of trial, unless fairness to the owner requires the value to be set as of some other date. *Lange v. State,* 86 Wn.2d 585, 547 P.2d 282 (1976). The market value of the property has been established by an unchallenged finding of fact in this action.

RCW 8.25.075 provides that a superior court rendering a judgment for the plaintiff awarding compensation for the taking of real property for public use without just compensation having been first made to the owner, shall award or allow to such plaintiff costs including reasonable attorney fees. Since this statute is mandatory in its terms (see *Snohomish v. Joslin,* 9 Wn. App. 495, 513 P.2d 293 (1973)), and since this action must be treated as one of inverse condemnation, the respondent is entitled to his attorney fees in the Superior Court proceeding. The cause will be remanded to that court for the purpose of determining the reasonable amount of such fees.

The decision of the Court of Appeals, *Brazil v. Auburn,* 23 Wn. App. 672, 598 P.2d 1 (1979), and the judgment of the Superior Court for King County are reversed. The Superior Court should enter judgment for the plaintiff for the market value of the land, and with costs and reasonable attorney fees.

UTTER, C.J., and STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.