# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CITY OF BELLEVUE, a municipal corporation, | DIVISION ONE |
| Respondent, | No. 70855-4-I (Consol. with No. 70856-2-I) |
| v. | |
| BEST BUY STORES, LP, a Virginia limited partnership, | UNPUBLISHED OPINION |
| Appellant, | |
| HD DEVELOPMENT OF MARYLAND, INC., a Maryland corporation; 457 120th AVENUE NE, LLC, a Delaware limited liability company; HOME DEPOT USA, INC., a Delaware corporation; THRIVENT FINANCIAL FOR LUTHERANS, a Wisconsin corporation; PUGET SOUND ENERGY, INC., a Washington corporation; KING COUNTY; and DOES 1-10, | |
| Defendants. | FILED: April 21, 2014 |

2014 APR 21 AM 9:15 COURT OF APPEALS DIV I STATE OF WASHINGTON FILED

DWYER, J. —

Although the courts may well determine from the evidence whether a project is for the public benefit, convenience or necessity, they are not trained or equipped to pick the better route, much less design and engineer the project. Thus, the rule that leaves these decisions to the administrative agencies is a sensible one consistent with the idea that the public's business be carried out with reasonable efficiency and dispatch by those possessing the superior talents to accomplish the public purposes.[1]

---

[1] Deaconess Hosp. v. Highway Comm'n, 66 Wn.2d 378, 405, 403 P.2d 54 (1965).

In this case, the City of Bellevue brought a condemnation action over two parcels of land in order to extend NE 4th Street from its current terminus at 116th Avenue NE to a new terminus at 120th Avenue NE. The proposed design calls for a five-lane road. Best Buy Stores, LP (Best Buy), the current lessor of one of the parcels, opposes the condemnation action, contending that the to-be-condemned property is not necessary to fulfill a public use. Specifically, Best Buy contends that a five-lane road is not necessary and that a four-lane road would suffice.

Best Buy fails to demonstrate that Bellevue's determination of public necessity was arbitrary and capricious such that it amounted to constructive fraud. Because it is not our role to second-guess Bellevue's choice of road design, we affirm.

I

The property at issue in this dispute is located at 457 120th Avenue NE in Bellevue. The property is owned by 457 120th Avenue NE, LLC (Landlord) and leased by Best Buy. Best Buy operates a retail store at that location. Immediately to the south is a parcel of land owned by HD Development of Maryland, Inc. (Home Depot), and occupied by a Home Depot retail store.

In 2008, Bellevue began planning for an extension of NE 4th Street from its current terminus at 116th Avenue NE to a new terminus at 120th Avenue NE. The road extension was part of a broader project known as the Mobility and Infrastructure (M&I) Initiative, which "was formed to address recent growth and planned development in the Downtown Bellevue, Bel-Red, and Wilburton areas."

Bellevue believed that the NE 4th Street extension would "provide an alternate to and relieve congestion at key intersections including NE 8th Street at 112th Avenue NE and NE 8th Street at 116th Avenue NE," and that it would "enhance travel time and mobility options."

The idea of extending NE 4th Street was not a new one. Previously, in 2006, KG Investments[2] had approached Bellevue about support for its development plans. KG Investments requested that Bellevue commit to condemning property for an extension of NE 4th Street through the properties occupied by Best Buy and Home Depot. As part of its request, KG Investments offered to fund the project. However, Bellevue declined KG Investments' offer.

From 2008 to 2012, the city council "reviewed considerable community input and undertook substantial community involvement" in relation to the M&I Initiative. Specifically, the city council "conducted three 'Open Houses' in 2010," had "multiple meetings with property owners and tenants," and discussed the M&I Initiative at 28 open public meetings.

The city council initially reviewed seven alternative designs for the NE 4th Street extension. Two designs were rejected because of their substantial impacts on Best Buy. After choosing one of the seven designs, the city council further considered three distinct modifications to that design. Ultimately, in April 2010, the city council selected a five-lane design that would require the demolition of 10,000 square feet of the Best Buy retail store. This design was

---

[2] Per the declaration of Melissa Moseley, Best Buy's former director of real estate, KG Investments owns the Landlord's interest in the 457 120th Avenue NE property.

selected because

> it impacted the least number of parcels, allowed for the ability to modify the existing structure for continued retail use, was the least overall cost compared to other alternatives considered at the time, was compatible with the Wilburton Village land use vision, and the community preferred the location where NE 4th would intersect with 120th Avenue NE.

Unsurprisingly, Best Buy objected to the probable demolition of a part of its store. Best Buy wrote seven letters and met with Bellevue representatives on 20 separate occasions since 2010, voicing its objections. On March 5, 2012, counsel for Best Buy wrote a letter to Bellevue stating, "Under no circumstances will Best Buy consent to the taking of its property for an unnecessary road lane." Best Buy's legal challenges to the proposed condemnation demonstrate the seriousness of its commitment to this statement. According to the declaration of Assistant City Attorney Monica Buck, Best Buy has "[a]ppealed the action of the City Council authorizing execution of a consultant agreement to complete final design and proposed plans," "[a]ppealed the City's threshold determination issued under the State Environmental Policy Act" to Bellevue's hearing examiner, "[f]iled a Request for Reconsideration of the Hearing Examiner's decision on the SEPA Appeal," "[f]iled with the King County Superior Court an appeal of the Hearing Examiner's decision under the Land Use Petition Act," "[f]iled an appeal of the Critical Areas Land Use Permit ("CALUP Appeal") issued by the Development Services Director for the NE 4th Street Extension Project" to the hearing examiner, and "[f]iled with the Hearing Examiner a Request for Reconsideration of the decision on the CALUP Appeal," all in addition to this

appeal. Meanwhile, Best Buy was aware that Bellevue had obtained grant funding that would be jeopardized should Bellevue not begin the project by a certain date.

On February 13, 2012, Ron Kessack, Bellevue Assistant Director of Capital Program Services, discussed a possible alternative four-lane road design with the city council. Kessack informed the council that the proposed design "would eliminate one of the westbound lanes up to the point just past Best Buy." Kessack stated that "right now we're looking at it and saying, you know, it's likely we don't [need the second westbound lane]. We do . . . want to run numbers on it and make sure and proof it out." One of the council members asked Kessack, "We're going to have more functionality if we have two westbound lanes, wouldn't we?" to which Kessack responded, "There's more wiggle room certainly."

In April 2012, counsel for Bellevue corresponded with Best Buy regarding a possible agreement between the parties. The proposed agreement incorporated a four-lane design similar to the one previously discussed by Kessack. The four-lane design narrowed the proposed road from 57 feet 3 inches to 42 feet 3 inches, and preserved an additional 2,000 square feet of the Best Buy retail store. However, because compensation for condemnation would be payable to the owner of the property, the Landlord needed to approve the agreement as well. Best Buy never obtained the Landlord's approval. The city council thus proceeded with the five-lane design it had previously adopted.

On February 4, 2013, the city council passed Ordinance No. 6098, authorizing the condemnation of property necessary for the NE 4th Street

extension. Therein, the council declared that it "finds construction of the Project to be a public use" and "specifically finds construction of the Project to be necessary, and in the best interests of the citizens." The ordinance also included legal descriptions of the property (hereinafter "take property") to be condemned for the project.

On April 29, 2013, Bellevue filed a petition in eminent domain to condemn the portion of the take property owned by Home Depot. Best Buy was named as a party to this action due to a sewer easement and a maintenance agreement it has with Home Depot. On May 6, Bellevue filed a petition in eminent domain to condemn the portion of the take property owned by the Landlord. The parties moved to consolidate the petitions for the purpose of a hearing on public use and necessity, which the trial court granted.

On July 23, 2013, Bellevue moved for an order adjudicating public use and necessity. Only Best Buy opposed the motion. Best Buy moved to present live testimony at the hearing. The trial court denied the motion, ruling that Best Buy presented no issues that might necessitate or benefit from live testimony.

At the hearing, Best Buy contended that a fifth lane was not necessary because four lanes would suffice. Best Buy also argued that Bellevue's decision to build a five-lane road was motivated by a desire to oust Best Buy from the land, and was done in collusion with the Landlord.

The trial court rejected all of Best Buy's arguments. On August 7, 2013, the trial court issued its findings of fact and conclusions of law. Therein, the trial court decreed:

1. The land, improvements, and property rights described as the Take Property in these Petitions in Eminent Domain will be taken for the public use of public street improvements for the NE 4th Street Extension Project, as more specifically described in Finding of Fact No. 5.

2. The Take Property as described in these Petitions in Eminent Domain is necessary for the implementation of the public use of the NE 4th Street Extension Project.

The trial court also issued a supplemental order explaining its reasoning. With respect to the issue of public use, the trial court stated, "It is beyond dispute that the use to which the property is to be put (as a public thoroughfare) is a public use." With respect to the issue of public necessity, the trial court had four responses to Best Buy's contentions:

First, for these purposes, necessity is not limited to present necessity; rather, the legislative body properly looks to future needs. Tacoma v. Welcker, 65 Wn.2d 677, 684, 399 P.2d 330 (1965).

Second, "the City" has decidedly not made a determination that 5 lanes were not necessary. To the contrary, the City Council has determined that they were. There has been ongoing discussion – both before and after that determination – of how other potential options might be developed and, in connection with this, city employees have expressed an openness to that proposition. However, the Council made its "intuitive" determination – and stuck with it – that it preferred the "more functionality" provided by the greater width.

Third, and most importantly, regardless of what disputes may now or in the future exist between Best Buy and its landlord, the property owner, it remains entirely speculative to suggest that the Bellevue City Council was either acting with an improper motive or utilizing improper means. This speculation is lacking in evidentiary support and the contention has not been established.

Finally, it should be noted that "[e]ven if the decision was partially motivated by improper considerations, it will not be vacated so long as 'the proposed condemnation demonstrates a genuine

- 7 -

need and . . . the condemnor in fact intends to use the property for the avowed purpose.'" RTA v. Miller, supra, at 418.[3]

Best Buy filed a motion for reconsideration, which the trial court denied.[4] Best Buy appeals.

II

Best Buy contends that the trial court erred by holding that Bellevue's proposed condemnation was a public necessity.[5] This is so, Best Buy asserts, because a five-lane road is not "necessary" when a four-lane road would be viable. Best Buy misconstrues the meaning of the word "necessary" in the context of a condemnation decision.

In order to condemn a piece of property, a municipality must demonstrate that "(1) the use is really public, (2) the public interest requires it, and (3) the property appropriated is necessary for that purpose." HTK Mgmt., LLC v. Seattle Popular Monorail Auth., 155 Wn.2d 612, 629, 121 P.3d 1166 (2005) (citing State ex rel. Wash. State Convention & Trade Ctr. v. Evans, 136 Wn.2d 811, 817, 966 P.2d 1252 (1998)). "The latter two findings are generally subsumed under the definition of 'necessity.'" In re Petition of City of Seattle, 104 Wn.2d 621, 623,

---

[3] Cent. Puget Sound Reg'l Transit Auth. v. Miller, 156 Wn.2d 403, 418, 128 P.3d 588 (2006).

[4] The trial court made two minor clarifications to its findings of fact, one to reflect that Best Buy had filed a Land Use Petition Act (chapter 36.70C RCW) appeal and one to change the word "proposed" to "advocated" in paragraph 12. Neither change affected the trial court's decision.

[5] Although Best Buy assigns error to the trial court's determination that Bellevue's condemnation action is for a public use, its entire argument is dedicated to the issue of public necessity. Assignments of error that are not supported by argument are deemed waived. Kadoranian v. Bellingham Police Dep't, 119 Wn.2d 178, 191, 829 P.2d 1061 (1992). Moreover, numerous cases hold that a public street constitutes a public use. Brazil v. City of Auburn, 93 Wn.2d 484, 487, 610 P.2d 909 (1980); State ex rel. Flick v. Superior Court for Chelan County, 144 Wash. 124, 130, 257 P. 231 (1927); State ex rel. Schroeder v. Superior Court of Adams County, 29 Wash. 1, 4-5, 69 P. 366 (1902).

707 P.2d 1348 (1985).

"Whether condemnation is necessary is largely a question for the legislative body of the jurisdiction or government agency seeking condemnation." Cent. Puget Sound Reg'l Transit Auth. v. Miller, 156 Wn.2d 403, 411, 128 P.3d 588 (2006). "A declaration of necessity by a proper municipal authority is conclusive in the absence of actual fraud or arbitrary and capricious conduct, as would constitute constructive fraud." HTK Mgmt., 155 Wn.2d at 629 (citing City of Des Moines v. Hemenway, 73 Wn.2d 130, 139, 437 P.2d 171 (1968)).

Bellevue determined that condemning the take property is "necessary and in the best interest of the public that interests in the land and property hereinafter described be condemned, appropriated, and taken for public use." That determination is conclusive unless Best Buy can demonstrate actual fraud or arbitrary and capricious action amounting to constructive fraud. This it has not done.

"Necessary" in the context of condemnation does not mean absolute necessity.

> The word 'necessary,' as used in connection with eminent domain statutes, means reasonable necessity under the circumstances. State ex rel. Lange v. Superior Court, 61 Wn.2d 153, 377 P.2d 425 (1963). It does not mean immediate, absolute, or indispensible need, but rather considers the right of the public to expect or demand that certain services be provided. City of Tacoma v. Welcker, 65 Wn.2d 677, 399 P.2d 330 (1965).

Hemenway, 73 Wn.2d at 140. Although a four-lane road may be feasible, we cannot conclude therefrom that a five-lane road is not necessary. Rather, when two options are both feasible, it is within the city council's discretion to determine

which option to pursue. "When reasonable minds can differ, courts will not disturb the legislative body's decision that necessity exists so long as it was reached 'honestly, fairly, and upon due consideration' of the facts and circumstances." Miller, 156 Wn.2d at 417-18 (quoting Welcker, 65 Wn.2d at 684).

The record here adequately demonstrates that Bellevue decided upon a five-lane road honestly, fairly, and after due consideration of the facts. Bellevue considered 10 different designs before deciding on the one it adopted. It also conducted three open houses and discussed the proposed project at 28 public meetings. Bellevue was mindful of Best Buy's concerns, as demonstrated by its numerous meetings with Best Buy, its rejection of two designs that would substantially impact the store, and its willingness to negotiate a settlement. Bellevue's stated reasons for selecting the proposed design also demonstrate that it duly considered the interests of the city, the public, and the land's occupants before reaching its decision.

Because Bellevue reached its decision honestly, fairly, and upon due consideration, the trial court did not err by entering the order on public use and necessity.[6]

---

[6] In addition to the trial court's conclusions of law, Best Buy challenges findings of fact 9, 10, 11, 12, 14, and 15. With respect to finding of fact 15, Best Buy contends that this finding is invalid because it is based on a "factually incorrect" and inadmissible declaration. We use the substantial evidence standard when reviewing challenged findings of fact:

> An appellate court reviews a trial court's findings of fact for substantial evidence in support of the findings. In re Marriage of Schweitzer, 132 Wn.2d 318, 329, 937 P.2d 1062 (1997). Evidence is substantial if it is sufficient to persuade a fair-minded, rational person of the declared premise. Bering v. SHARE, 106 Wn.2d 212, 220, 721 P.2d 918 (1986). A reviewing court may not disturb findings of fact supported by substantial evidence even if there is conflicting evidence. In re Marriage of Lutz, 74 Wn. App. 356, 370, 873 P.2d 566 (1994).

III

Nevertheless, Best Buy contends that Bellevue's condemnation decision should be overturned because it was arbitrary and capricious such that it amounts to constructive fraud. This is so, it asserts, because Bellevue made its decision in collusion with the Landlord and to benefit the Landlord. Best Buy's contention is not supported by the record.

"Fraud or constructive fraud would occur if the public use was merely a pretext to effectuate a private use on the condemned lands." Evans, 136 Wn.2d at 823. Although a private individual may derive some benefit from a condemnation action, it would be improper for us to automatically conclude that the condemnation is being done to effectuate a private use. Town of Steilacoom v. Thompson, 69 Wn.2d 705, 709, 419 P.2d 989 (1966). That private individuals will benefit from condemnation actions is to be expected, especially when the condemnation is for a public roadway. Petition of City of Bellevue, 62 Wn.2d 458, 459-60, 383 P.2d 286 (1963).

---

Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010).

Finding of fact 15 states that "Best Buy representatives have indicated on multiple occasions that Best Buy will appeal all permit decisions and approvals necessary to construct the Project in order to delay the Project, including the potential loss of grant funding." This finding is supported by substantial evidence. Best Buy has filed multiple administrative appeals and superior court actions in connections with the NE 4th Street Extension Project. Best Buy was aware that Bellevue had grants with expiration dates, which could lapse while appeals were pending. Best Buy has also told Bellevue that it would not agree to the proposed condemnation under any circumstances. From these facts, a rational person could conclude that Best Buy intended to delay the project.

Best Buy further contends that findings of fact 9, 10, 11, 12, and 14 are invalid because the trial court could not make these findings while its State Environmental Policy Act (chapter 43.21C RCW) (SEPA) petition was still pending. However, "questions of public use and necessity are not subject to the State Environmental Policy Act." Miller, 156 Wn.2d at 421. The outcome of Best Buy's SEPA petition is thus irrelevant to the trial court's findings. Best Buy's challenges to the trial court's findings of fact are without merit.

Instead, factors that Washington courts have previously considered in determining whether a condemnation is pretextual are "the dollar contribution of the private party, the percentage of public versus private use, and whether the private use is occurring in an architectural surplus of usable space."[7] Evans, 136 Wn.2d at 823. Here, Best Buy did not prove any facts indicating that Bellevue's condemnation was pretextual. Although in 2006 KG Investments offered to pay for a condemnation of the property occupied by Best Buy, Bellevue declined the offer. In fact, nothing in the record demonstrates that Bellevue accepted any private funds for the roadway project. Additionally, the use of the property will be completely public. The fifth lane will not differ in its public usage from the other four lanes—Best Buy could not seriously argue to the contrary.

Bellevue's consideration of a potential redevelopment of the land now occupied by Best Buy similarly does not demonstrate pretext. As the trial court held, "the legislative body properly looks to future needs." Our Supreme Court has previously upheld condemnation projects based solely on future needs. For instance, the Supreme Court upheld a condemnation by the City of Tacoma for the purpose of protecting a source of drinking water from pollution, even though the source was not then polluted. Welcker, 65 Wn.2d at 685-86. As the court held,

> The fact that the water now being supplied by the city is potable and does not exceed tolerable contamination levels, or that such contamination as presently exists cannot be traced to the

---

[7] No single factor is dispositive. As our Supreme Court has previously held, "private funding of a public project does not necessarily corrupt the public nature of that project." Evans, 136 Wn.2d at 819.

usage of the lands here involved, in nowise detracts from the wisdom or present necessity of providing reasonable safeguards against a *reasonably realistic and foreseeable* future danger of contamination. A 'stitch in time' has never been considered capricious.

Welcker, 65 Wn.2d at 686 (emphasis added).

Future redevelopment of the area surrounding the proposed project is a realistic and foreseeable possibility, even if no redevelopment plans are currently in place. Redevelopment is a common occurrence in urban areas. It is reasonable for city residents to desire or expect that Bellevue should plan with the possibility of redevelopment in mind. It would be short-sighted, if not unreasonable, for Bellevue to assume that Best Buy will remain on the land permanently.

Best Buy further relies on King County v. Theilman, 59 Wn.2d 586, 369 P.2d 503 (1962), for its assertion that Bellevue's condemnation is pretextual. However, Theilman is factually inapposite. In that case, the president of a development company wished to build a straight road connecting a subdivision owned by the company to a nearby highway. Theilman, 59 Wn.2d at 589. The development company possessed the land necessary to build a curved road connecting the subdivision to the highway, but the company could not build a straight road without crossing over property owned by Theilman. Theilman, 59 Wn.2d at 589. Unable to purchase the property from Theilman, the president of the development company turned to county authorities and "'requested that we assist him in this acquisition because he was unable to reasonably negotiate with Mr. Theilman for this property.'" Theilman, 59 Wn.2d at 590. The county then

sought to condemn the property. Theilman, 59 Wn.2d at 591-92. The trial court found that the condemnation was not necessary, but entered an order approving the condemnation act based solely on public use. Theilman, 59 Wn.2d at 591-92.

The court in Theilman called the facts in the case "bizarre, if not unique." 59 Wn.2d at 595. First, the court held that a trial court could not enter an order on public use without also addressing the question of public necessity, as the two were inextricably linked. Theilman, 59 Wn.2d at 594. Second, the court agreed with the trial court's conclusion that the condemnation was not necessary. The condemnation, the court stated, was "the county's in name only." Theilman, 59 Wn.2d at 596. This was so, the court held, because the actual "effect of this action is to allow a private party to do indirectly that which the law prevents him from doing directly." Theilman, 59 Wn.2d at 596.

The record here does not support a conclusion that Bellevue's proposed condemnation has the practical effect of allowing the Landlord to pursue a course of action it is not otherwise lawfully able to pursue. The NE 4th Street extension is part of a comprehensive roadway improvement plan. The entire project will affect numerous parcels of land, not just the one occupied by Best Buy. The practical effect of the project will be to increase the capacity of public roadways in this portion of Bellevue. Although the Landlord might incidentally benefit from the extension of NE 4th Street, incidental benefits are to be expected from such a

project.[8] City of Bellevue, 62 Wn.2d at 459-60. Any incidental benefit would not, and could not, change the practical effect of a condemnation.

Best Buy fails to demonstrate any sort of pretext in Bellevue's proposed condemnation action. As the trial court accurately held, "it remains entirely speculative to suggest that the Bellevue City Council was either acting with an improper motive or utilizing improper means." Best Buy thus fails to prove that Bellevue's condemnation decision was arbitrary and capricious such that it amounted to constructive fraud. The trial court did not err by deferring to Bellevue's determination of public necessity.

IV

Best Buy further contends that the trial court erred by not requiring a more detailed description of the take property in Bellevue's ordinance and petition. This is so, it asserts, because the current description does not provide for accommodation to Best Buy for the continuation of its business. To the contrary, Bellevue's ordinance and petition reasonably describe the take property.

Bellevue did not need to describe every detail of its planned condemnation in the ordinance and petition.

[P]roperty sought to be condemned should be described with

---

[8] Even if Bellevue *had* considered the potential benefit to the Landlord in reaching its decision, its determination of public necessity would still be entitled to deference. "Even if the decision was partially motivated by improper considerations, it will not be vacated so long as 'the proposed condemnation demonstrates a genuine need and . . . the condemnor in fact intends to use the property for the avowed purpose.'" Miller, 156 Wn.2d at 418 (alteration in original) (quoting In re Petition of Port of Grays Harbor, 30 Wn. App. 855, 864, 638 P.2d 633 (1982)). As previously stated, Bellevue has demonstrated the public necessity for the NE 4th Street extension. Additionally, there is no indication that the take property will be used for anything other than a public road. Thus, even had Bellevue considered the potential benefit to the Landlord, we would still defer to the city council's determination of public necessity.

"reasonable certainty." It is not necessary that the [municipality] outline in definite detail the entire plan of operation by which it proposes to conduct the business of the system acquired. To do so would, in many cases, be impractical, and in others impossible. All that is necessary is that the general plant or system be specified and described with reasonable certainty.

State ex rel. Wash. Water Power Co. v. Superior Court for Grant County, 8 Wn.2d 122, 127-28, 111 P.2d 577 (1941) (citation omitted). Here, Bellevue provided a legal description of the property to be taken. This was sufficient to describe the take property with reasonable certainty. Best Buy does not cite to any authority to the contrary.

Contrary to Best Buy's assertion, Bellevue's description of the take property did not need to include accommodations for Best Buy. Best Buy, in fact, has no right to demand accommodations from Bellevue. "[O]nce the taking is complete, payment of just compensation is the only sufficient and suitable remedy."[9] London v. City of Seattle, 93 Wn.2d 657, 665, 611 P.2d 781 (1980). The provisions Best Buy requests to appear in the ordinance and petition are not mandated by law, and the trial court did not err by denying Best Buy's request.

V

Finally, Best Buy contends that the trial court erred by denying its motion for live testimony. This is so, it asserts, because there was an open question as to whether the fifth lane was publicly necessary. We disagree.

---

[9] Additionally, any reduction in sales revenue is not a "taking" such that Best Buy would be entitled to compensation. Northlake Marine Works, Inc. v. City of Seattle, 70 Wn. App. 491, 511, 857 P.2d 283 (1993).

The determination of whether live testimony is required for an adjudication of public use and necessity is within the discretion of the trial court. <u>City of Blaine v. Feldstein</u>, 129 Wn. App. 73, 77, 117 P.3d 1169 (2005). "If there are no relevant factual disputes or credibility issues and the record is sufficient to fully inform the court, the case may be properly resolved without a testimonial hearing." <u>Feldstein</u>, 129 Wn. App. at 76.

Here, the trial court determined that there were no issues that necessitated or would benefit from live testimony. The relevant facts were not in dispute. Neither party challenged the credibility of the witnesses. The parties provided the trial court with ample briefing, a substantial number of exhibits, and sworn affidavits from both lay and expert witnesses. This was sufficient for the trial court to render a fair opinion on public use and necessity.

The trial court did not err by denying Best Buy's motion for live testimony.

Affirmed.

_____, J.

We concur:

_____, J.        _____, J.